STATE OF NORTH CAROLINA v. TERRY LAMONT ROBINSON

No. 578A00

(Filed 5 April 2002)

**1. Venue— motion for change—pretrial publicity—specific prejudice not shown**

The trial court did not err in a capital prosecution for first-degree murder by denying defendant's motion for a change of venue based upon pretrial publicity where a great number of jurors had prior knowledge of the murder, defendant exhausted his peremptory challenges, and a juror to whom defendant objected sat on the jury, but all of the seated jurors stated unequivocally that they could put aside pretrial publicity and defendant did not establish specific and identifiable prejudice from five newspaper articles about the murder. N.C.G.S. § 15A-957.

STATE v. ROBINSON

[355 N.C. 320 (2002)]

## 2. Criminal Law— ruling on objection—not summarily

A first-degree murder defendant's contention that the trial court ruled summarily on his motion for individual voir dire without allowing defendant to argue the motion fully was not supported by the record.

## 3. Jury— peremptory challenges—additional challenges not granted

The trial court did not abuse its discretion in a first-degree murder prosecution by not granting defendant additional peremptory challenges where defendant did not allege that the specific juror whom he contended should have been removed for cause had formed or expressed an opinion on guilt or innocence, and there was nothing in the record to suggest that the jurors could not put aside any pretrial information.

## 4. Jury— selection—questioning—court's supervision— defendant not hindered

The trial court in a capital first-degree murder prosecution did not improperly limit defendant's questioning and examination of prospective jurors. The court sought to supervise the use of the court's time by preventing repetition, but made an express effort to ensure that defendant was "satisfied," and defendant cited no instances in the record where he was hindered in his examination of a prospective juror.

## 5. Jury— selection—questions about parole eligibility

The trial court did not err in a capital prosecution for first-degree murder by refusing to allow defendant to conduct voir dire of prospective jurors about parole eligibility on a life sentence. A defendant does not have a constitutional right to so examine prospective jurors and the court instructed the jury that a sentence of life imprisonment means life without parole.

## 6. Evidence— DNA testimony—witness not qualified as expert—allowed

The trial court did not err in a first-degree murder prosecution by allowing testimony concerning DNA analysis where the witness was never qualified as an expert but defendant made only a general objection, defendant engaged in extensive cross-examination regarding the source of the DNA evidence, and defendant did not demonstrate the basis for the objection or the grounds upon which the testimony should have been excluded.

**7. Evidence— photograph—defendant wearing particular shirt—admissible**

The trial court did not abuse its discretion in a capital prosecution for first-degree murder by admitting into evidence a photograph of defendant wearing a particular shirt to show that defendant had owned such a shirt and to illustrate testimony.

**8. Evidence— examination of witnesses—inconsistencies**

The trial court did not err in a capital prosecution for first-degree murder where defendant was not allowed to ask questions in a form which called for a witness to vouch for the veracity of another witness. Defendant was free to ask about inconsistencies, and did so.

**9. Evidence— failure of another to identify mug-shots— hearsay**

The trial court did not err in a capital first-degree murder prosecution by sustaining the State's objection to a question as to whether someone who didn't testify had identified anyone from mug-shot books. Any response would have been hearsay and defendant did not identify any exception which would have allowed a response.

**10. Evidence— testimony about other testimony**

The trial court did not err in a capital first-degree murder prosecution by sustaining the State's objection when defendant asked a witness if he had heard another's testimony, the witness replied that he had, and defendant asked, "And, do you recall her stating that. . . ."

**11. Homicide— first-degree murder—premeditation and deliberation—sufficiency of evidence**

There was substantial circumstantial evidence for the jury to conclude that defendant intentionally killed the victim with premeditation and deliberation where defendant carefully planned a robbery of a restaurant with an accomplice, stashed clothing to change into after the robbery, pointed his weapon at the victim after entering the restaurant, shot the victim in the head after an exchange, told the accomplice that the victim had killed himself by trying to grab him, and told his cousin that the victim had refused to give defendant the money and that defendant had shot him.

**12. Robbery— attempted armed—intent—overt act—sufficiency of evidence**

There was substantial evidence that defendant had the intent to rob by the use of a dangerous weapon and that he committed an overt act in furtherance of that intent so as to support a charge of attempted armed robbery where defendant pointed a gun at the victim and told him to put the money in the bag.

**13. Criminal Law— prosecutor's argument—defendant's impeachment of witness**

There was no plain error in a first-degree murder prosecution where the trial court did not intervene ex mero motu during the prosecutor's closing remarks about defendant's impeachment of a witness. The prosecutor's zealous advocacy and hyperbolic statements attempting to mitigate the damage done by defendant's impeachment did not merit the court's intervention.

**14. Sentencing— capital—combined mitigating circumstances**

There was no error in a capital sentencing proceeding where defendant contended that the court's combination of requested mitigating circumstances excluded some of the submitted circumstances, but a careful review of the record revealed that the court's final list of mitigating circumstances subsumed the proposed circumstances and omitted none.

**15. Sentencing— capital—aggravating circumstances—prior robberies—stipulation—inherently violent**

The trial court did not err in a capital sentencing proceeding by submitting to the jury three separate statutory aggravating circumstances that defendant had been previously convicted of three separate crimes of common law robbery where defendant stipulated to the judgments and commitments for three prior common law robbery convictions. Although defendant contended that he never stipulated to the existence of the use of violence in those convictions, common law robbery is a crime involving the use or threat of violence.

**16. Sentencing— capital—aggravating circumstance—underlying felony—conviction based on felony murder and premeditation**

The trial court did not err in a capital sentencing proceeding by submitting the aggravating circumstance that the murder was

committed during an attempted armed robbery. There was suffi-
cient evidence to support the robbery conviction, and the under-
lying felony may be submitted as an aggravating circumstance
when a defendant is convicted of felony murder and murder with
premeditation and deliberation.

**17. Sentencing— capital—curative instruction not given—not
requested**

The trial court did not err in a capital sentencing proceed-
ing by not giving a curative instruction after sustaining an objec-
tion where defendant did not request a curative instruction or
ask that the witness's testimony by stricken.

**18. Sentencing— capital—death sentence not arbitrary**

There was no evidence that a sentence of death was imposed
under the influence of passion, prejudice, or any other arbitrary
consideration.

**19. Sentencing— capital—death sentence proportionate**

A sentence of death was proportionate where defendant was
convicted based on premeditation and deliberation and the jury
found multiple aggravating circumstances, including the (e)(5)
and (e)(3) circumstances, which have been held sufficient to sup-
port a sentence of death standing alone. Defendant instituted and
carefully planned the robbery of a Pizza Inn with his accomplice,
showed no remorse when telling others what had happened, and
the crime and its circumstances manifest an egregious disregard
for human life.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judg-
ment imposing a sentence of death entered by Brown (Frank R.), J.,
on 10 April 2000 in Superior Court, Wilson County, upon a jury verdict
finding defendant guilty of first-degree murder. On 15 May 2001, the
Supreme Court allowed defendant's motion to bypass the Court of
Appeals as to his appeal of an additional judgment. Heard in the
Supreme Court 13 November 2001.

*Roy Cooper, Attorney General, by William P. Hart, Special
Deputy Attorney General, for the State.*

*Thomas R. Sallenger for defendant-appellant.*

STATE v. ROBINSON

[355 N.C. 320 (2002)]

BUTTERFIELD, Justice.

On 7 September 1999, defendant was indicted for first-degree murder and for attempted robbery with a dangerous weapon. Defendant was tried capitally before a jury at the 3 April 2000 Criminal Session of Superior Court, Wilson County. The jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. The jury also found defendant guilty of attempted robbery with a dangerous weapon. Following a capital sentencing proceeding, the jury recommended a sentence of death for the first-degree murder conviction. On 10 April 2000, the trial court sentenced defendant to death. The trial court also sentenced defendant to a consecutive sentence of 133 to 169 months' imprisonment for the attempted robbery conviction. Defendant appealed his sentence of death for first-degree murder to this Court as of right. On 15 May 2001, this Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of the attempted robbery conviction and judgment.

At trial, the State's evidence tended to show that on 16 May 1999, defendant told Ronald Bullock that he wanted Bullock to help him rob the Pizza Inn in Wilson, North Carolina. Bullock agreed to the plan. The two began preparing for the crime by getting some clothes and weapons to use during the robbery. Defendant and Bullock then went to visit defendant's cousin, Jesse Hill. Hill indicated that he would not participate in the robbery. Nightfall was approaching as defendant and Bullock dropped Hill off at his grandmother's house.

Under cover of darkness, defendant and Bullock parked near the Pizza Inn carrying with them the clothes they planned to change into after the robbery. Defendant was armed with a nine-millimeter Ruger automatic pistol. Bullock was armed with a .380-caliber automatic pistol. At 9:00 p.m., the two entered the Pizza Inn through the take-out entrance.

With their faces covered and their weapons drawn, defendant and Bullock neared the cash register. John Rushton, the victim and manager of the Pizza Inn, approached the cash register from the rear of the restaurant. Defendant pointed his weapon at Rushton and ordered him to put the money in a bag. Rushton said, "What are you going to do if I don't?" Defendant replied, "Do you think I'm playing?" Defendant pointed his weapon at the floor and fired. Defendant then shot Rushton in the head as Rushton moved forward. Defendant and

Bullock fled. According to the medical examiner, Rushton died from a gunshot wound to the head.

As defendant and Bullock fled, they stopped to change clothes. Bullock did not, however, put on shoes. Bullock also dropped his weapon as he ran. The two ran in separate directions through a nearby housing area. Both the shoes and the weapon were recovered by the police.

At approximately 10:00 p.m., defendant appeared at Andre Foster and Crystal Dawn Baker's home approximately five blocks from the Pizza Inn. Defendant appeared sweaty and nervous. Defendant went to the bathroom, washed his hands, and asked for a bandage for a cut on his finger on his left hand. Baker noticed a few drops of blood in the sink after defendant used it.

Around midnight, defendant and Bullock returned to Jesse Hill's house. Defendant told Hill that he had shot a man after he asked the man to give him the money. Defendant also told Hill that he had almost shot his own hand when he shot the victim. Hill did not believe defendant until the next day when he heard the news accounts of the murder. Hill called police to arrange a meeting with them to inform them of what he knew about defendant's and Bullock's involvement with the murder. Additional facts will be presented as needed to discuss specific issues.

## PRETRIAL

[1] First, defendant contends that the trial court erred in denying his motion for a change of venue or the selection of a special venire. Defendant alleges that the trial court did not properly consider his motion and that the trial court's denial was summary and an abuse of discretion. We disagree.

The evidence presented to the trial court in support of defendant's motion consisted of five newspaper articles published in the *Wilson Daily Times* from 16 May 1999 through 24 May 1999. Defendant argues that these newspaper articles constituted extraordinary pretrial coverage of the murder and, as such, made it impossible for defendant to receive a fair and impartial trial from a jury drawn from Wilson County. The applicable statutory requirements for a change of venue or special venire are codified in N.C.G.S. § 15A-957, which provides in part:

STATE v. ROBINSON

[355 N.C. 320 (2002)]

If, upon motion of the defendant, the court determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either:

(1) Transfer the proceeding to another county in the prosecutorial district as defined in G.S. 7A-60 or to another county in an adjoining prosecutorial district as defined in G.S. 7A-60, or

(2) Order a special venire under the terms of G.S. 15A-958.

This Court has stated that pretrial publicity, in and of itself, does not dictate a change of venue if the publicity consists of factual news accounts regarding the commission of a crime and pretrial proceedings. *State v. Soyars*, 332 N.C. 47, 53, 418 S.E.2d 480, 484 (1992); *State v. Madric*, 328 N.C. 223, 229, 400 S.E.2d 31, 35 (1991). The test adopted by this Court to determine whether a motion for a change of venue should be granted is whether "it is reasonably likely that prospective jurors would base their decision in the case upon pretrial information rather than the evidence presented at trial and would be unable to remove from their minds any preconceived impressions they might have formed." *State v. Jerrett*, 309 N.C. 239, 255, 307 S.E.2d 339, 347 (1983).

In *State v. Yelverton*, we stated, "The determination of whether a defendant has carried his burden of showing that pre-trial publicity precluded him from receiving a fair trial rests within the trial court's sound discretion." *State v. Yelverton*, 334 N.C. 532, 540, 434 S.E.2d 183, 187 (1993). "Absent a showing of abuse of discretion, [the trial court's] ruling will not be overturned on appeal." *Madric*, 328 N.C. at 226-27, 400 S.E.2d at 33-34. In order to meet this burden, "defendants must ordinarily establish specific and identifiable prejudice against them as a result of pretrial publicity." *State v. Barnes*, 345 N.C. 184, 204, 481 S.E.2d 44, 54, *cert. denied*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997), *and cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998). It is well settled that in meeting his burden a defendant " 'must show *inter alia* that jurors with prior knowledge decided the case, that [defendant] exhausted his peremptory challenges, and that a juror objectionable to [defendant] sat on the jury.' " *State v. Wallace*, 351 N.C. 481, 510, 528 S.E.2d 326, 345 (quoting *State v. Billings*, 348 N.C. 169, 177, 500 S.E.2d 423, 428, *cert. denied*, 525 U.S. 1005, 142 L. Ed. 2d 431 (1998)) (alterations in original), *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000).

Before granting a change of venue or special venire, a trial court must find that "there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial." N.C.G.S. § 15A-957 (1999). Defendant argues that the five newspaper articles satisfy this requirement. A careful review of the record reveals that the newspaper articles reported on the murder, the arrest of Ronald Bullock, the arrest of defendant, an editorial decrying the rise of the use of firearms and calling the murder "senseless," and an article describing a fund-raiser held for the victim's family. Only the two articles concerning the arrests mention defendant's name. We do not believe that this is sufficient to constitute a showing of abuse of discretion on the part of the trial court. While defendant did show that a great number of the jurors had prior knowledge of the murder, that defendant exhausted his peremptory challenges, and that a juror to whom he objected sat on the jury, he has not established specific and identifiable prejudice against him as a result of pretrial publicity. We have carefully reviewed the record and found that all of the jurors seated stated unequivocally that they could put aside any pretrial publicity and decide the case solely on the evidence presented in court. Therefore, this assignment of error is overruled.

## JURY SELECTION

[2] Defendant next raises an assignment of error in which he contends that the trial court summarily denied his motion for individual *voir dire* without being afforded an opportunity to argue the motion fully. The record reveals that the trial court entertained the motion and heard argument from defendant's counsel. After defense counsel's brief comments, the trial court denied the motion. There is no suggestion in the record that defense counsel's opportunity to expound on the matter was curtailed. There is also no suggestion in the record that defense counsel asked to be heard further on the matter.

Defendant puts forward many of the same arguments as in the assignment of error above regarding the motion for change of venue. "A defendant does not have a right to examine jurors individually merely because there has been pretrial publicity." *State v. Burke*, 342 N.C. 113, 122, 463 S.E.2d 212, 218 (1995). At the time defense counsel addressed this issue, he said, "I just think it's the best way to proceed in this case, given the facts of this case, and the conditions surrounding this case." Faced with this generalized argument in support

of individual *voir dire,* the trial court denied defendant's motion. Defendant's contention that the trial court ruled summarily without hearing defendant's complete articulation is unsupported by the record. This assignment is without merit.

[3] In a similar assignment of error, defendant next argues that the trial court erred in not granting him additional peremptory challenges. In his argument, defendant restates many of the same arguments that he put forward in his previous assignments of error. Specifically, defendant argues that prospective juror Ada Perkins should have been removed for cause, that the trial court's refusal to remove Perkins was error, and that he required additional peremptory challenges because Perkins could not qualify as a disinterested and impartial juror. While defendant did properly preserve the issue for appeal, he has not shown that the trial court abused its discretion in denying the challenge for cause. Defendant contends that Perkins was one of the thirty-five prospective jurors who had either read, heard, or seen accounts of the circumstances surrounding the murder. However, defendant has not alleged that Perkins had "formed or expressed an opinion as to the guilt or innocence of the defendant." N.C.G.S. § 15A-1212(6) (1999). As with defendant's change of venue argument, there is nothing in the record which indicates that each of the jurors could not put aside any pretrial information and be a fair and impartial juror. The trial court, based on its observation and sound judgment, has the discretion to determine whether a juror can be fair and impartial. *State v. Kennedy,* 320 N.C. 20, 26, 357 S.E.2d 359, 363 (1987). "Where the trial court can reasonably conclude from the *voir dire* . . . that a prospective juror can disregard prior knowledge and impressions, follow the trial court's instructions on the law, and render an impartial, independent decision based on the evidence, excusal is not mandatory." *State v. Green,* 336 N.C. 142, 167, 443 S.E.2d 14, 29, *cert. denied,* 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). As there is no showing that the trial court abused its discretion, we over- rule defendant's assignment of error.

[4] In another assignment of error, defendant contends that the trial court improperly limited defendant's questioning and examination of prospective jurors. The trial court stated:

> To the attorneys for the State and the defendant, the Court instructs you not to introduce persons already introduced by the Court, not to pose questions of law or hypothetical questions, not to repeat questions, and not to ask for information already

included on the questionnaire. And, you are directed to pose questions to the entire panel whenever possible.

Based on this instruction, defendant argues that he was precluded from "meaningful questioning of venire members." The record indicates otherwise. Prior to giving the above instruction, the trial court had introduced many people+ in the courtroom who were expected to testify. The trial court asked the prospective jurors if they knew or were acquainted with any of these individuals. Clearly, the trial court sought to supervise the use of the trial court's and prospective jurors' time by preventing repetition.

We observe from the record that defense counsel did have the opportunity to probe prospective jurors' fitness. The record reveals the following colloquy between defense counsel, a prospective juror, and the trial court:

Q. And, I believe you also indicated [on the questionnaire] that you have a family member or a close friend that's been the victim of a crime?

A. Juror Number Eleven: Yes.

Q. And, it was a breaking and entering, I believe, and the intruder was shot but not charged, sort of explain that to me, and the Court?

A. Juror Number Eleven: I don't remember what it was.

Q. You also said somebody was convicted—was charged and convicted?

THE COURT: It says "no conviction" on mine.

Q. No conviction?

A. Juror Number Eleven: Yes (nods).

THE COURT: Isn't that what it says on your's?

[DEFENSE COUNSEL]: I think it says—I could be wrong, Judge, but I think it says, yes on mine. "Was anyone charged, arrested or convicted[?]"

THE COURT: It's written on mine: "He was charged but no conviction."

[DEFENSE COUNSEL]: Okay.

THE COURT: Anyway you can ask him about it if you're not satisfied.

. . . .

Q. But, you don't remember anything about it is what you said?

A. Juror Number Eleven: No, sir.

Q. You think that event in your life would prevent you from giving either side a fair and impartial trial?

A. Juror Number Eleven: No, sir.

The above exchange reveals that the trial court could not have harbored the intent to curtail defendant's "meaningful questioning" of prospective jurors. Instead, the exchange demonstrates that the trial court made an express effort to ensure that defendant was "satisfied." Furthermore, defendant cites to no portion of the record where he was hindered in his examination of a prospective juror. Defendant attempts to support his contention with a slightly modified restatement of his change of venue and peremptory challenge arguments. His attempt, as such, is insufficient to call the trial court's *voir dire* into question. This assignment of error is without merit.

[5] Defendant also assigns error to the trial court's refusal to let him "conduct *voir dire* . . . of [prospective] jurors regarding their misconceptions about parole eligibility on a life sentence." Defendant premises his argument on the notion that it is "common knowledge" that jurors believe that defendants who receive life sentences without parole are subject to release. This argument must fail. This Court has examined this issue on numerous occasions and has consistently held that neither this Court nor the United States Supreme Court has ever held that a defendant has a constitutional right to so examine prospective jurors. *State v. Neal*, 346 N.C. 608, 617, 487 S.E.2d 734, 739-40 (1997), *cert. denied*, 522 U.S. 1125, 140 L. Ed. 2d 131 (1998). Furthermore, the trial court fully complied with N.C.G.S. § 15A-2002 by instructing the jury "in words substantially equivalent to those of this section, that a sentence of life imprisonment means a sentence of life without parole." N.C.G.S. § 15A-2000 (1999). This assignment of error is overruled.

## GUILT-INNOCENCE

Defendant asks this Court to consider his argument that the trial court committed plain error in the instructions given on the two the-

ories of first-degree murder applied in the case *sub judice* in that they confused the jury. As defendant recognizes, defense counsel did not preserve this issue for appeal as required by North Carolina Rule of Appellate Procedure 10(b)(2). Also, defendant did not preserve the issue for appellate review as plain error under Appellate Rule 10(c)(4) in that no plain error was alleged in the assignment of error upon which defendant seeks to rely. Defendant has not properly preserved this issue for our review. Therefore, we overrule this assignment of error.

[6] Next, defendant assigns error to the trial court's overruling his objection to testimony of Special Agent Boodeè of the State Bureau of Investigation. Agent Boodeè testified that he had examined a cutting from a camouflage neck hood and had determined that it contained DNA bands "consistent with a mixture originating from multiple donors, of which the victim and two suspects may be included." Defendant contends that the testimony was prejudicial to him. Defendant also contends that the witness was never qualified as an expert for any purpose in this case. Defendant does not argue plain error.

Although defendant argues that the witness was never qualified as an expert, he contends that the evidence was speculative and did not assist the trier of fact in understanding the evidence or in determining a fact in issue and that it was, therefore, prejudicial. This argument is unpersuasive. If the witness is not to be considered an expert, as defendant contends, then the standards of expert testimony under North Carolina Rule of Evidence 702 upon which defendant relies are inapplicable. We examine the testimony as nonexpert testimony. Defendant did not need to demonstrate that the evidence did not assist the trier of fact. Instead, defendant's burden was to show that the testimony should have been excluded on some other grounds. This, he has not done.

Defense counsel offered only a general objection to the witness' statement concerning the DNA found on the hood and did not ask to be heard on the objection. After the trial court overruled defendant's objection, the witness continued to testify without objection. Defense counsel then engaged in extensive cross-examination of the witness regarding the source of the DNA evidence about which the witness testified. Defendant has failed to demonstrate the basis for the objection or upon what appropriate grounds the testimony should have been excluded. This assignment of error is overruled.

STATE v. ROBINSON

[355 N.C. 320 (2002)]

[7] By two further assignments of error, defendant contends that the trial court erred by admitting into evidence a photograph of defendant's "Mecca" tee shirt and a photograph of defendant wearing a "Mecca" tee shirt and by publishing these photographs to the jury. Defendant has chosen to argue these two assignments of error together. We, however, must examine each piece of evidence separately. There appears to be some misunderstanding in the State's brief to this Court of exactly which pieces of evidence introduced at trial are the subjects of these assignments of error. The State's argument focuses on a tee shirt with the word "Mecca" on it that was found in the woods near the murder scene. The State argues that the introduction of this tee shirt was proper because it was identified by defendant's accomplice, Ronald Bullock, as the shirt defendant was wearing when they committed the attempted robbery at the Pizza Inn. One of defendant's assignments of error refers to the admission of "defendant's Mecca t-shirt." This and defendant's combined argument may have led to the confusion appearing in the State's brief. After careful review, it is apparent that defendant is not challenging the introduction of the tee shirt itself. From the transcript references in his assignments of error, defendant cites only to that portion of the trial where a photograph of defendant wearing a tee shirt with the word "Mecca" on it and a photograph of the tee shirt with the word "Mecca" on it that was found in the woods near the murder scene and that was previously introduced into evidence were at issue. The trial court conducted a *voir dire* out of the presence of the jury prior to the introduction of these photographs. These photographs are the subject of our review.

The photograph of defendant wearing a "Mecca" tee shirt was taken on 29 April 1999 by the witness, David Jones, who testified during the introduction of these photographs. The witness stated that he had taken the photograph on 29 April 1999 and that he had also taken a photograph, in the morning of the day he testified, of the "Mecca" tee shirt that had previously been introduced. Defendant argues that the photographs were not relevant and, even if relevant, should have been excluded under North Carolina Rule of Evidence 403 as more prejudicial than probative. Defendant's argument is unpersuasive.

The introduction of the photograph of defendant wearing a "Mecca" tee shirt seventeen days prior to the murder was relevant to show that defendant had at one time been in the possession of such a shirt. Under North Carolina Rule of Evidence 401, relevant evidence is "evidence having any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. R. Evid. 401. Just as the testimony of defendant's accomplice tended to show that defendant was wearing a shirt similar to the one found in the woods behind the murder scene, the photograph tended to show that defendant had worn a similar shirt seventeen days prior to the murder. Likewise, the photograph of the tee shirt already admitted into evidence was helpful in illustrating the witness' testimony. " 'Photographs are usually competent to be used by a witness to explain or illustrate anything that is competent for him to describe in words.' " *State v. Watson*, 310 N.C. 384, 397, 312 S.E.2d 448, 457 (1984) (quoting *State v. Cutshall*, 278 N.C. 334, 347, 180 S.E.2d 745, 753 (1971)). The decision of whether to exclude relevant evidence under Rule 403 rests in the discretion of the trial court. *State v. Murillo*, 349 N.C. 573, 601, 509 S.E.2d 752, 768 (1998), *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1999); *State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990). Defendant argues that the photographs were highly prejudicial under Rule 403. We find no abuse of discretion and overrule defendant's assignments of error.

[8] In two additional assignments of error, defendant contends that he was prohibited from impeaching one witness and from "hearing the answer to a highly relevant and material question" from another. Defendant questioned witness Crystal Baker concerning statements she made in court and statements she made to a detective, who also testified. Defense counsel asked witness Baker, "But, if he [the detective] testified that you told him that, he would be telling the truth, wouldn't he, Ms. Baker?" The trial court sustained the State's objection. Defendant also sought to elicit testimony from witness Ronald Bullock. Defense counsel asked witness Bullock, "And, if Jesse Hill testified that he saw you at 6:00 on Monday afternoon, he would be mistaken then?" The trial court sustained the State's objection.

In both instances, defendant sought to have the witnesses vouch for the veracity of another witness. This form of questioning is not proper. A lay witness' testimony is limited to "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. R. Evid. 701. Defendant was free to, and did, question the detective about statements made by witness Baker and was then free to argue, which he did, any inconsistencies between Baker's statements. Defendant was also free to argue any inconsistencies between the testimony of witnesses Bullock and

Hill. Even if witness Bullock could have rationally perceived that witness Hill was mistaken, the question called for an opinion that would not have been helpful to the jury. In neither instance was it proper for defendant to ask the questions in the above form, which called for the witness to vouch for the veracity of another witness. These assignments of error are overruled.

**[9]** Defendant raises an assignment of error in which he contends that the trial court erred in sustaining the State's objection when defendant sought to elicit information from witness Steven Gardner as to whether Jennifer Aycock had identified anyone when shown mug-shot books. Defense counsel asked witness Gardner, "Ms. Aycock didn't identify anyone, did she?" Ms. Aycock did not testify at trial. Defendant's question called for a hearsay response.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. R. Evid. 801(c). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." N.C. R. Evid. 801(a). An act, such as a gesture, can be a statement that is subject to the rules of evidence regarding hearsay. *State v. Satterfield*, 316 N.C. 55, 58, 340 S.E.2d 52, 54 (1986). Clearly, any statement by Ms. Aycock would have been hearsay if allowed. Defendant did not identify any hearsay exception that would have allowed a response from the witness. This assignment of error is without merit.

**[10]** In the second assignment of error, defendant contends that the trial court erred by sustaining the State's objection to his question of whether a witness recalled a portion of another witness' testimony. Defendant argues specifically that by sustaining the objection, the trial court prevented him from hearing the answer to a "highly relevant and material question." The record reveals otherwise. Defendant asked witness Steven Gardner if he had heard witness Crystal Baker's testimony. Gardner responded that he did hear her testimony. Defendant then asked, "And, do you recall her stating that—." The trial court sustained the State's objection. Immediately thereafter, defendant resumed his examination of the witness that he had started before asking the above question. Defendant asked the witness what Baker had told him when he interviewed her. The record does not reveal any suggestion that defendant was prohibited from fully examining what Baker told Gardner. The trial court properly sustained the State's objection when defendant tried to refer to Baker's testimony

rather than the more relevant and material issue of what Baker had or had not told Gardner. *See* N.C. R. Evid. 403 (1999). This assignment of error is overruled.

**[11]** Defendant next assigns error to the trial court's denying his motions to dismiss the charges of first-degree murder and attempted robbery with a dangerous weapon. Defendant argues that the evidence was insufficient to satisfy a rational fact finder of the existence of the elements beyond a reasonable doubt for each offense charged.

> The law governing a trial court's ruling on a motion to dismiss is well established. "[T]he trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. *State v. Gibson*, 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995). The trial court must also resolve any contradictions in the evidence in the State's favor. *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility. *Id.*

*State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001).

Defendant contends that the State's evidence was insufficient to prove that defendant intentionally killed the victim with premeditation and deliberation. Defendant also contends that there was insufficient evidence of an overt act in furtherance of an intent to commit robbery with a dangerous weapon to support the charge of attempted robbery with a dangerous weapon. Attempted robbery with a dangerous weapon was the underlying felony for the felony murder conviction.

We stated in *State v. Laws* as follows:

> "A killing is 'premeditated' if the defendant contemplated killing for some period of time, however short, before he acted." *State v. Williams*, 334 N.C. 440, 447, 434 S.E.2d 588, 592 (1993), *judgment vacated on other grounds*, 511 U.S. 1001, 128 L. Ed. 2d

STATE v. ROBINSON

[355 N.C. 320 (2002)]

42 (1994). A killing is "deliberate" if the defendant formed an intent to kill and carried out that intent in a cool state of blood, "free from any 'violent passion suddenly aroused by some lawful or just cause or legal provocation.' " *Id.* (quoting *State v. Fields,* 315 N.C. 191, 200, 337 S.E.2d 518, 524 (1985)). Premeditation and deliberation are mental processes and ordinarily are not susceptible to proof by direct evidence. Instead, they usually must be proved by circumstantial evidence. *State v. Brown,* 315 N.C. 40, 59, 337 S.E.2d 808, 822-23 (1985), *cert. denied,* 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988). Circumstances from which premeditation and deliberation may be inferred include:

> "(1) lack of provocation on the part of the deceased, (2) the conduct and statements of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill-will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds."

*State v. Keel,* 337 N.C. 469, 489, 447 S.E.2d 748, 759 (1994) (*quoting State v. Gladden,* 315 N.C. 398, 430-31, 340 S.E.2d 673, 693, *cert. denied,* 479 U.S. 871, 93 L. Ed. 2d 166 (1986)), *cert. denied,* 513 U.S. 1198, 131 L. Ed. 2d 147 (1995).

*State v. Laws,* 345 N.C. 585, 593-94, 481 S.E.2d 641, 645 (1997). Here, there was substantial circumstantial evidence for the jury to conclude that defendant intentionally killed the victim with premeditation and deliberation.

Defendant carefully planned the robbery with his accomplice, Ronald Bullock. The two stashed clothing in the woods to change into after the robbery to aid their getaway. After entering the Pizza Inn, defendant pointed his weapon at the victim and ordered him to "[p]ut the money in the f——ing bag." The victim hesitated and asked, "What are you going to do if I don't?" Defendant replied, "Do you think I'm playing?" Defendant pointed his weapon at the floor and fired. Defendant then shot the victim in the head as the victim moved forward. When asked by Bullock why defendant had killed the victim, defendant responded that the victim had killed himself by trying to

grab him. Defendant also told his cousin, Jesse Hill, that the victim had refused to give him the money and that he had shot him. When viewed in the light most favorable to the State, there existed substantial evidence for the jury to conclude beyond a reasonable doubt that defendant killed the victim with premeditation and deliberation.

**[12]** Defendant contends, in these same assignments, that there was insufficient evidence of an overt act to support the charge of attempted robbery with a dangerous weapon and, therefore, no underlying felony for the application of the first-degree felony murder rule. "The two elements of an attempt to commit a crime are: first, the intent to commit the substantive offense; and, second, an overt act done for that purpose which goes beyond mere preparation but falls short of the completed offense." *State v. Smith*, 300 N.C. 71, 79, 265 S.E.2d 164, 169-70 (1980). Defendant contends that the testimony of Ronald Bullock—that defendant pointed a nine-millimeter Ruger at the victim and told him to "[p]ut the money in the f—ing bag"—is "suspect at best." This argument goes to the weight and credibility of the witness' testimony. As stated earlier from *Lucas*, the trial court does not weigh the evidence or determine any witness' credibility. There was substantial evidence that defendant had the intent to rob by use of a dangerous weapon and that he committed an overt act or acts in furtherance of that intent. These assignments of error are meritless and are, therefore, overruled.

**[13]** Defendant asks this Court to find plain error in the trial court's failure to intervene *ex mero motu* during the prosecutor's closing argument remarks about defendant's impeachment of witness Jesse Hill. The prosecutor said:

> Now, Jesse Hill. If you wondered why people don't want to come forward and testify in cases when they witness things, or they know things in a crime? If you ever wondered why? Because this man gets up there and he is trying to tell you the truth. And, all the defense can do is malign him to go and try to trip him up on times, which don't matter, because he said it was light or dark or whatever, and then act like:

> "You've got worthless check convictions?"

> As if that would somehow equate with what happened in Boulder, Colorado when the Ramsey girl disappeared. Or, maybe a Bosnian war criminal.

"You have worthless check [sic]? You have eight worthless check convictions? You've been charged with carrying a concealed weapon?"

It is clear from the transcript that the prosecutor was attempting to mitigate any damage done by defendant's impeachment of witness Hill. At no time did the prosecutor suggest that defendant's actions were linked to the events in Colorado or Bosnia. We stated in *State v. Johnson*:

> In capital cases, however, an appellate court may review the prosecution's argument, even though defendant raised no objection at trial, but the impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.

*State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979). We do not believe that the prosecutor's zealous advocacy and hyperbolic statements merited the trial court's intervention and that the trial court did not abuse its discretion in allowing the argument. This assignment of error is overruled.

## SENTENCING

Defendant asks this Court to consider his three arguments that the trial court committed plain error in (1) giving peremptory instructions on nonstatutory mitigating circumstances that were not consistent with North Carolina law, did not constitute a true peremptory instruction, and deprived defendant of his federal and state constitutional rights; (2) failing to give a peremptory instruction for the (f)(2), (f)(6), and (f)(7) statutory mitigating circumstances; and (3) failing to give a peremptory instruction for each nonstatutory mitigating circumstance. As defendant recognizes, trial counsel did not preserve these issues for appeal as required by North Carolina Rule of Appellate Procedure 10(b)(2). Also, the issues were not preserved for review as plain error under Appellate Rule 10(c)(4) in that no plain error was alleged in the assignments of error upon which defendant seeks to rely. Defendant has not properly preserved these issues for our review. Therefore, these assignments of error are overruled.

[14] Defendant submitted forty-two mitigating circumstances at the charge conference. The final list included fourteen nonstatutory mitigating circumstances and five statutory mitigating circumstances,

which included the N.C.G.S. § 15A-2000(f)(9) catchall mitigating circumstance. Defendant assigns as error the trial court's combining of the requested mitigating circumstances and the exclusion of some submitted mitigating circumstances. After a careful and thorough review of the record, we hold that the trial court's final list of mitigating circumstances subsumed the proposed mitigating circumstances to the exclusion of none.

This Court has held that " '[t]he refusal [of a trial judge] to submit proposed circumstances separately and independently . . . [is] not error.' " *State v. Hartman*, 344 N.C. 445, 468, 476 S.E.2d 328, 341 (1996) (quoting *State v. Greene*, 324 N.C. 1, 21, 376 S.E.2d 430, 443 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990))(second, third, and fourth alterations in original), *cert. denied*, 520 U.S. 1201, 137 L. Ed. 2d 708 (1997). We have also stated that "[i]f a proposed nonstatutory mitigating circumstance is subsumed in other statutory or nonstatutory mitigating circumstances which are submitted, it is not error for the trial court to refuse to submit it." *State v. Richmond*, 347 N.C. 412, 438, 495 S.E.2d 677, 691, *cert. denied*, 525 U.S. 843, 142 L. Ed. 2d 88 (1998). For each of the omitted proposed mitigating circumstances, a corresponding mitigating circumstance that subsumed the proposed one was submitted to the jury. Also, the jury could have availed itself of the opportunity to consider any evidence of mitigating value under the (f)(9) catchall mitigating circumstance. Defendant has failed to demonstrate any omission or any improper combination of mitigating circumstances inconsistent with the holdings of this Court. These assignments of error are overruled.

[15] In his next assignment of error, defendant alleges that the trial court erred in submitting to the jury for its consideration three separate statutory aggravating circumstances that defendant had been previously convicted of three separate prior convictions for common law robbery. Defendant contends that he never stipulated to the existence of the use or threat of violence in any of the convictions. However, common law robbery is inherently a crime involving the use or threatened use of violence. *State v. Jones*, 339 N.C. 114, 163-64, 451 S.E.2d 826, 854 (1994), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995). The record reveals that defendant did stipulate to the exhibits introduced through the Clerk of Superior Court, Wilson County, which were the judgments and commitments for each of the common law robbery convictions. This assignment of error is overruled.

STATE v. ROBINSON

[355 N.C. 320 (2002)]

**[16]** Defendant assigns error to the trial court's submission of the (e)(5) aggravating circumstance that the murder was committed during the commission of an attempt to commit robbery with a dangerous weapon. A person commits the felony offense of attempted robbery with a dangerous weapon if that person, "with the specific intent to unlawfully deprive another of personal property by endangering or threatening his life with a dangerous weapon, does some overt act calculated to bring about this result." *State v. Allison*, 319 N.C. 92, 96, 352 S.E.2d 420, 423 (1987).

Where a jury convicts a defendant of first-degree murder under the theory of premeditation and deliberation and under the felony murder rule, and both theories are supported by the evidence, the underlying felony may be submitted to the jury by the trial court as an (e)(5) aggravating circumstance. *State v. Davis*, 340 N.C. 1, 27, 455 S.E.2d 627, 641, *cert. denied*, 516 U.S. 846, 133 L. Ed. 2d 83 (1995). Here, defendant was convicted under both theories of first-degree murder. Defendant was also convicted of attempted robbery with a dangerous weapon.

As we stated earlier when discussing defendant's motion to dismiss the charge of attempted robbery with a dangerous weapon, there was substantial evidence to support the charge and the conviction. Defendant's argument that there was no overt act because defendant never touched any money or the cash register is not meritorious. The evidence presented that defendant pointed his weapon at the victim, demanded money, and then fired his weapon clearly supported the submission of the (e)(5) aggravating circumstance. This assignment of error is without merit.

**[17]** In another assignment of error, defendant contends that the trial court abused its discretion in not intervening *ex mero motu* and issuing a curative instruction after it sustained defendant's objection to a question from the prosecutor during the sentencing proceeding. Defendant introduced a photograph of defendant when he was approximately six or seven years old. The prosecutor asked defendant's mother on cross-examination if she was aware that the victim had children about that same age. The trial court sustained defendant's objection. Defendant did not ask that the comment be stricken or that a curative instruction be given.

This Court has held that where the trial court sustains defendant's objection, he has no grounds to except, and there is no prejudice. *State v. Trull*, 349 N.C. 428, 446, 509 S.E.2d 178, 190 (1998), *cert.*

STATE v. ROBINSON

[355 N.C. 320 (2002)]

*denied,* 528 U.S. 835, 145 L. Ed. 2d 80 (1999); *State v. Quick,* 329 N.C. 1, 29, 405 S.E.2d 179, 196 (1991). This Court has also held that a defendant cannot complain that no curative instruction was given where he did not request one. *State v. Williamson,* 333 N.C. 128, 139, 423 S.E.2d 766, 772 (1992). Therefore, defendant's assignment of error is without merit.

## PRESERVATION

Defendant raises several additional issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving these issues for possible further judicial review: the short-form indictment was insufficient to charge defendant with first-degree murder in that it failed to allege all of the elements of first-degree murder; the trial court erred in instructing the jury regarding the definition of mitigation; the trial court erred in instructing the jury that defendant had the burden of proving mitigating circumstances by a preponderance of the evidence; the trial court erred in instructing that each juror was allowed, rather than required, to consider any mitigating circumstances the juror determined to exist when deciding sentencing Issues Three and Four; the North Carolina death penalty statute is unconstitutionally vague and overbroad, results in unconstitutional verdicts, and is imposed in a discretionary and discriminatory manner; the trial court committed reversible error in its instructions that the jury had a "duty" to recommend death; the trial court erred in instructing the jury on Issues Three and Four that it "may" consider mitigating circumstances that it found to exist in Issue Two; the trial court committed reversible error in its instructions as to what each juror may consider regarding the mitigating circumstances in Issues Three and Four; the trial court erred by instructing the jury concerning the unanimity requirement in various jury decisions; the trial court erred in its instructions that the answers to Issues One, Three, and Four must be unanimous; and the trial court committed reversible error in its instructions that permitted jurors to reject a submitted mitigating circumstance because it had no mitigating value. We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, we reject these assignments of error.

## PROPORTIONALITY REVIEW

[18] Finally, this Court has the exclusive statutory duty in capital cases to review the record to determine (1) whether the record supports the aggravating circumstances found by the jury; (2) whether

the death sentence was entered under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2). Having thoroughly reviewed the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. We find no evidence that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. Thus, we turn to our final statutory duty of proportionality review.

**[19]** In the present case, the jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. At defendant's capital sentencing proceeding, the jury found the existence of the four aggravating circumstances submitted for its consideration: three separate aggravating circumstances that defendant had been previously convicted of a felony involving the use or threat of violence, N.C.G.S. § 15A-2000(e)(3), and that the murder was committed while defendant was engaged in the commission of robbery with a firearm, N.C.G.S. § 15A-2000(e)(5).

Five statutory mitigating circumstances, including the catchall, were submitted for the jury's consideration: defendant has no significant history of prior criminal activity N.C.G.S. § 15A-2000(f)(1); defendant committed the murder while under the influence of a mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); defendant's capacity to appreciate the criminality of the conduct or to conform his conduct to the requirements of law was impaired N.C.G.S. § 15A-2000(f)(6); defendant's age at the time of the murder, N.C.G.S. § 15A-2000(f)(7); and the catchall, N.C.G.S. § 15A-2000(f)(9). Of these, the jury found the existence of only the (f)(2) mitigator. Of the fourteen nonstatutory mitigating circumstances submitted by the trial court, one or more jurors found the following four to have mitigating value: that defendant had no male guidance or father figure in his formative years; that defendant witnessed family violence and the death of two cousins; that defendant was neglected by his mother and was exposed to alcohol use by others beginning at an early age; and that defendant has not had a strong, continued, affirmative guidance and support system.

The purpose of proportionality review is to "eliminate the possibility that a person will be sentenced to die by the action of an aber-

rant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). "In conducting our proportionality review, we must compare the present case with other cases in which this Court has ruled upon the proportionality issue." *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

We have determined the death penalty to be disproportionate on seven occasions. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate.

Several characteristics of this case support this conclusion. Defendant was convicted of first-degree murder on the basis of premeditation and deliberation. We have recognized that "a finding of premeditation and deliberation indicates 'a more calculated and cold-blooded crime.' " *State v. Harris*, 338 N.C. 129, 161, 449 S.E.2d 371, 387 (1994) (quoting *State v. Lee*, 335 N.C. 244, 297, 439 S.E.2d 547, 575, *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994)), *cert. denied*, 514 U.S. 1100, 131 L. Ed. 2d 752 (1995). In none of the cases held disproportionate by this Court did the jury find the existence of the (e)(3) aggravating circumstance, as the jury did here. The (e)(5) aggravating circumstance found by the jury here was also found in *Young*. However, in only two cases has this Court held a death sentence disproportionate despite the existence of multiple aggravating circumstances. In *Young*, this Court considered *inter alia* that the defendant had two accomplices, one of whom "finished" the crime. *Young*, 312 N.C. at 688, 325 S.E.2d at 193. By contrast, defendant in the present case had one accomplice who fled the scene before defendant and never fired his weapon. In *Bondurant*, this Court weighed the fact that the defendant expressed concern for the vic-

tim's life and remorse for his action by accompanying the victim to the hospital. *Bondurant*, 309 N.C. at 694, 309 S.E.2d at 182-83. In the present case, defendant shot the victim in the head and immediately fled the scene.

We also consider cases in which this Court has held the death penalty proportionate; however, "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. We conclude that this case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate.

This Court previously held proportionate a death sentence based, as in the present case, on the (e)(3) and (e)(5) statutory aggravating circumstances. *Davis*, 340 N.C. 1, 455 S.E.2d 627. Further, there are four statutory aggravating circumstances that, standing alone, this Court has held sufficient to support a sentence of death. *State v. Warren*, 347 N.C. 309, 328, 492 S.E.2d 609, 619 (1997), *cert. denied*, 523 U.S. 1109, 140 L. Ed. 2d 818 (1998). Both the (e)(3) and (e)(5) statutory circumstances, which the jury found here, are among those four. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995).

In the present case, defendant instituted and carefully planned the robbery of the Pizza Inn with his accomplice. Defendant showed no remorse when telling his accomplice and others what happened after having shot and killed the victim. The crime of which defendant was convicted and the circumstances under which it occurred manifest an egregious disregard for human life. Accordingly, we conclude that the sentence of death recommended by the jury and ordered by the trial court is not disproportionate.

We conclude that defendant received a fair trial and capital sentencing proceeding, free from prejudicial error. Accordingly, the sentence of death recommended by the jury is left undisturbed.

NO ERROR.