An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-842

NORTH CAROLINA COURT OF APPEALS

Filed: 18 March 2014

STATE OF NORTH CAROLINA

    v.

MATTHEW KEITH HUTCHESON

Nash County
Nos. 11 CRS 051133,051314

Appeal by Defendant from judgments entered 28 February 2013 by Judge Thomas H. Lock in Superior Court, Nash County. Heard in the Court of Appeals 21 January 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Teresa M. Postell, for the State.*

> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Barbara S. Blackman, for Defendant.*

McGEE, Judge.

Matthew Keith Hutcheson ("Defendant") was convicted on 25 February 2013 of second-degree murder and discharging a weapon into an occupied dwelling. The evidence presented to the jury, when viewed in the light most favorable to the State and giving the State the benefit of all reasonable inferences, is set forth below.

Duwone Parker ("Mr. Parker"), Defendant, and others were socializing at the home of Mr. Parker's grandmother (the house) on the evening of 25 February 2011. Mr. Parker and Defendant left the house together in Defendant's vehicle that evening between 11:00 p.m. and midnight. A video recording from the local Wal-Mart showed Defendant and Mr. Parker entering Wal-Mart at 2:54 a.m. in the early hours of 26 February 2011, buying food, and then leaving at 3:27 a.m.

At approximately 5:30 a.m. on the morning of 26 February 2011, several of Defendant's neighbors heard gunfire coming from the direction of Defendant's house. Amy Feasel ("Ms. Feasel"), who lived in front of Defendant's house, heard five to seven rapidly fired shots, a pause, and then another burst of five to seven shots. After hearing the second burst of shots, Ms. Feasel walked to a rear window of her home and saw a man smoking on the back deck of Defendant's house. The lights were on and she watched the man for five minutes as he smoked, paced, entered the house and turned off the lights.

John Kilpatrick ("Mr. Kilpatrick"), who lived directly in front of Defendant's house, also heard five to seven rapidly fired shots, a pause, and then another burst of five to seven shots. Mr. Kilpatrick thought it sounded like the shots were fired from just outside his bedroom window. Upon hearing the

first shots, Mr. Kilpatrick looked out a window, but saw nothing. He heard the blinds in his spare room shake when the second burst of shots were fired. He called 911.

Keen Gravely ("Mr. Gravely") lived a couple of houses behind Defendant's house and recalled hearing two shots, a one-second pause, and then another three to four shots. Mr. Gravely looked out his windows, saw nothing, and then called 911. He said it sounded like the shots were fired from the same gun.

At 8:06 p.m., 26 February 2011, the evening after the alleged early morning gunshots, credit card records and store video from a Home Depot indicated that Defendant had bought plastic sheeting from the Home Depot. Mr. Parker's body, wrapped in plastic sheeting and secured with tie-down straps and small strips of duct tape, was found four miles from Defendant's house on 2 March 2011. Burn marks were visible on the plastic sheeting and on Mr. Parker's body. Police found a half-roll of plastic sheeting of identical size and thickness on Defendant's back deck. Police also found similar tie-down straps and duct tape with small strips torn off in a shed on Defendant's property. Police recovered a butane torch, cigarette lighter, and charcoal lighter fluid from Defendant's truck. Police also found Mr. Parker's blood on Defendant's living room rug, on the outside and inside of a trashcan outside Defendant's house, and

in the bed of Defendant's truck.

Karen Kelly ("Ms. Kelly"), a pathologist, testified at trial that she had determined Mr. Parker died of a gunshot wound to the neck "below and behind his right ear" and that the shot had been fired from a distance of less than three inches. On cross-examination, Ms. Kelly testified it was possible that Mr. Parker's wound could have been self-inflicted.

Police searched Defendant's house and vehicle on 3 March 2011, and found a 9.0 mm handgun in Defendant's truck. Jennifer Pohlheber ("Agent Pohlheber"), a State Bureau of Investigation firearms and ballistics expert, testified that the bullet recovered from Mr. Parker's body had the same general class characteristics as the bullets test fired from Defendant's 9.0 mm handgun, and could have been fired from a 9.0 mm, .38 caliber, or .357 caliber handgun. According to Agent Pohlheber, rifling replication and damage to the bullets complicated her ability to make a positive match.

Mr. Kilpatrick noticed bullets and bullet holes in his den, trophy room, and shed on 3 March 2011. Police recovered one 9.0 mm bullet from Mr. Kilpatrick's window facing, one 9.0 mm bullet from inside his house, and two 9.0 mm bullets from his shed. Police found two shell casings in flowerpots outside Defendant's home. Agent Pohlheber testified that the shell casings were

fired from Defendant's 9.0 mm handgun. Agent Pohlheber also stated the bullets recovered from Mr. Kilpatrick's home and shed bore class characteristics similar to the test bullets she fired from Defendant's handgun and thus could have been fired from Defendant's handgun. Defendant was arrested on 3 March 2011 and charged with discharging a weapon into an occupied dwelling and injury to real property. Defendant was subsequently indicted on 6 June 2011 for first-degree murder and on 11 July 2011 for discharging a weapon into occupied property and injury to real property.

During Defendant's opening statement at trial, Defendant's counsel stated that, at some point on 26 February 2011, Defendant woke up from "a drug-induced, intoxicated alcohol binge" with no memory of events from earlier that day. Defendant found his friend, Mr. Parker, lying dead on the floor.

Defendant presented expert testimony from Dr. Claudia Coleman ("Dr. Coleman"), a forensic psychologist; Dr. Wilkey Wilson ("Dr. Wilson"), a neuropharmacologist; and Dr. George Corvin ("Dr. Corvin"), a forensic psychiatrist. These experts testified that Defendant suffered from long-term polysubstance dependence (addiction to anti-anxiety medications, pain medications, and crack cocaine), bipolar disorder, chronic depression, major depressive episodes overlaying the chronic

depression, anxiety disorder, and possibly obsessive compulsive disorder. Dr. Coleman and Dr. Corvin testified that these conditions prevented Defendant from being able to deliberate or form a specific intent to kill, an element of first-degree murder.

In his closing argument, Defendant's counsel argued that the State had failed to prove Defendant fired the shots into Mr. Kilpatrick's house or that Defendant killed Mr. Parker. In the alternative, defense counsel maintained that, if the jury was convinced Defendant had killed Mr. Parker, Defendant was at most guilty of second-degree murder as Defendant was unable to form the specific intent necessary for first-degree murder due to his demonstrated substance abuse and mental health issues.

The jury returned verdicts of guilty of second-degree murder and of discharging a weapon into occupied property. Defendant was sentenced to consecutive terms of one hundred forty-four to one hundred eighty-two months for second-degree murder and sixty to eighty-one months for discharging a weapon into occupied property. Defendant appeals.

## I. *Standard of Review*

The standard of review on a motion to dismiss is *de novo*. *Neier v. State of N.C.*, 151 N.C. App. 228, 232, 565 S.E.2d 229, 232 (2002) (citations omitted). Under this standard, the Court

"considers the matter anew and freely substitutes its own judgment" for that of the trial court. *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citations omitted).

When considering the denial of a "defendant's motion for dismissal, the question for the [trial] [c]ourt is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted). Where the evidence merely "raise[s] a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it," the evidence is insufficient and the motion to dismiss should be granted. *Powell*, 299 N.C. at 98, 261 S.E.2d at 117. However, if the evidence "is relevant and adequate to convince a reasonable mind to accept a conclusion," it is substantial and the case should be submitted to the jury. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255 (2002) (citations omitted). Circumstantial evidence is sufficient even where it does not rule out every hypothesis suggesting innocence. *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002) (citations omitted).

When determining whether substantial evidence exists, the trial court views the evidence in the light most favorable to the State, "giving the State the benefit of all reasonable inferences." *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992) (citations omitted). "Contradictions and discrepancies do not warrant dismissal of the case" but should be resolved by the jury. *Benson*, 331 N.C. at 544, 417 S.E.2d at 761. Furthermore, the "defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (2000) (citation omitted).

## II.

Defendant first argues the trial court erred by denying his motion to dismiss for insufficiency of the evidence for the charge of discharging a weapon into an occupied dwelling. We disagree.

In reviewing Defendant's motion to dismiss, this Court must determine whether there was substantial evidence of the crime and also whether Defendant was sufficiently identified as the perpetrator. *Powell*, 299 N.C. at 98-99, 261 S.E.2d at 117. Defendant does not dispute that a crime was committed, but rather challenges the sufficiency of the evidence identifying him as the perpetrator.

Multiple witnesses testified they heard shots fired from the direction of Defendant's house in the early hours of 26 February 2011. There was also evidence presented at trial that showed: (1) Defendant was at his house that night, (2) around the time the shots were fired, only one person was observed standing outside Defendant's house, (3) the only other person at Defendant's house that night was Mr. Parker, and (4) Mr. Parker's body was found less than a week later in woods near Defendant's house. While Defendant presented a theory that Mr. Parker, in fact, fired the shots into Mr. Kilpatrick's home and then committed suicide, the test for determining whether the charge should have been submitted to the jury is not whether Defendant offered a plausible alternative explanation, but rather whether a "reasonable inference of [Defendant's] guilt may be drawn from the circumstances." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988).

We hold the testimony of the State's witnesses and the physical evidence constituted evidence "relevant and adequate to convince a reasonable mind to" conclude that Defendant committed the crime. The charge of firing into an occupied dwelling was properly submitted to the jury. *Robinson*, 355 N.C. at 336, 561 S.E.2d at 255 (citation omitted). The trial court did not err in denying Defendant's motion to dismiss this charge.

III.

Defendant next argues the trial court erred by denying his motion to dismiss the State's first-degree murder charge for insufficiency of the evidence. We disagree.

Defendant was convicted of second-degree murder. In reviewing a motion to dismiss, this Court must determine whether there was substantial evidence of the crime and also whether Defendant was sufficiently identified as the perpetrator. *Powell*, 299 N.C. at 98-99, 261 S.E.2d at 117. Defendant contends the State failed to prove both that Mr. Parker died by virtue of a criminal act and that the criminal act was perpetrated by Defendant.

The State's evidence, even if circumstantial, need not rule out every hypothesis offered by Defendant suggesting innocence. *Mann*, 355 N.C. at 301, 560 S.E.2d at 781. Thus, Defendant's implied alternative theory that Mr. Parker did not die by virtue of a criminal act, but rather committed suicide, has no bearing on our determination as to whether the trial court's denial of Defendant's motion to dismiss was proper.

Circumstantial evidence may also provide the requisite evidence of motive, opportunity, capability and identity needed to identify the accused as the perpetrator of the offense. *Stone*, 323 N.C. at 452, 373 S.E.2d at 434. The evidence, viewed

in the light most favorable to the State and giving it the benefit of all reasonable inferences as this Court is required to do, *State v. Benson*, 331 N.C. at 544, 417 S.E.2d at 761, tended to show Defendant was at the scene of the murder, establishing Defendant's opportunity to commit the crime. The evidence also demonstrated that Defendant possessed a 9.0 mm handgun capable of firing the bullet recovered from Mr. Parker's body. Furthermore, during the early morning of 26 February 2011, gunshots were heard coming from the direction of Defendant's house where both Defendant and Mr. Parker were present. Defendant emphasizes in his brief that there was no history of violence between Defendant and Mr. Parker, and that on the evening in question, they had socialized together without any incident, and that Defendant had no motive to kill Mr. Parker. While motive can be "relevant to identify an accused as the perpetrator of [the] crime" *State v. Bell*, 65 N.C. App. 234, 238, 309 S.E.2d 464, 467 (1983), it "is not an element of [a crime], nor is its absence a defense." *State v. Elliot*, 344 N.C. 242, 273, 475 S.E.2d 202, 216 (1996).

Additionally, there is substantial evidence that Defendant disposed of Mr. Parker's body.

> The conduct of the accused at the time of the offense or after being charged with it, such as flight, the fabrication of false and contradictory statements, the concealment of

> the instruments of violence, the destruction
> or removal of proofs tending to show that an
> offense had been committed or to ascertain
> the offender, all are reviewable in evidence
> as circumstances connected with and throwing
> light upon the question of imputed guilt.

*State v. Spencer*, 176 N.C. 709, 715, 97 S.E. 155, 158 (1918). Defendant's failure to contact the police, along with evidence of his concerted efforts to conceal Mr. Parker's body, is "relevant and adequate" evidence upon which "a reasonable mind [could] accept [the] conclusion" that Defendant killed Mr. Parker. *Robinson*, 355 N.C. at 336, 561 S.E.2d at 255.

We hold this evidence was sufficient to survive Defendant's motion to dismiss the charge of murder. The trial court did not err in submitting this charge to the jury.

No error.

Judges HUNTER, Robert C. and ELMORE concur.

Report per Rule 30(e).