NO. COA13-1330

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

STATE OF NORTH CAROLINA

v.

Pitt County
No. 12 CRS 55715

LYNWOOD EUGENE HARRIS, JR.

Appeal by defendant from judgments entered 29 May 2013 by Judge Quentin T. Sumner in Pitt County Superior Court. Heard in the Court of Appeals 5 June 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Kimberly N. Callahan, for the State.*

> *New Hanover County Public Defender Jennifer Harjo, by Assistant Public Defender Brendan O'Donnell, for defendant.*

ERVIN, Judge.

Defendant Lynwood Eugene Harris, Jr., appeals from judgments based upon his convictions for misdemeanor sexual battery and contributing to the abuse or neglect of a juvenile. On appeal, Defendant contends that his trial counsel provided him with constitutionally deficient representation by failing to properly preserve his challenge to the sufficiency of the evidence to support his conviction for contributing to the abuse or neglect of a juvenile for the purpose of appellate review, incorrectly instructing the jury concerning the issue of his

guilt of contributing to the abuse or neglect of a juvenile, failing to intervene *ex mero motu* for the purpose of addressing certain remarks made during the prosecutor's final argument, and allowing the admission of testimony that was irrelevant and improperly vouched for the prosecuting witness' credibility. After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we conclude that the trial court's judgments should remain undisturbed.

## I. Factual Background

### A. Substantive Facts

On 23 June 2012, Diane Phillips had a birthday party at her house. Among those in attendance were Defendant and J.W., Ms. Phillips' eight-year-old granddaughter.[1] As of the date of the party, Ms. Phillips and Defendant had been involved in a romantic relationship for approximately 14 years. On the day of the party, Defendant came and left the house on a regular basis and consumed alcohol throughout the course of the day.

On the evening of the party, Jessica was lying in Ms. Phillips' bed when Defendant entered the room with a cup full of liquor. Defendant offered Jessica a drink from the cup and

---

[1]J.W. will be referred to throughout the remainder of this opinion as Jessica, a pseudonym used for ease of reading and to protect J.W.'s privacy.

tried to hand the cup to her. Jessica claimed that Defendant played with her hair, squeezed her buttocks, and "kept on talking about if I let him suck on my chest they'll grow up really big and pretty." According to Jessica, Defendant "kept on squeezing [Jessica's] bottom and then he--he stuck his thumb in [her] mouth and said--Suck it, baby. Suck it."

During the evening, Jessica came to the screen door leading to the porch and said that she needed to tell Ms. Phillips something. Jessica told Ms. Phillips that she was scared, that she thought that Defendant had tried to rape her, and that Defendant was "feeling on [her] buttocks," "talking about sucking on [her] breasts," and asking if she would "let [him] suck on [her] breasts so they'll [be] big and pretty when [she got] big." After receiving this information, Ms. Phillips threw Defendant out of the house and threatened to kill him if he ever returned. Subsequently, Ms. Phillips laid down with Jessica and began crying, stating that she "shut down" after her conversation with Jessica because she "was in shock."

Early the next morning, Ms. Phillips called the police. When the investigating officers arrived, Ms. Phillips told them what had happened. After speaking with Ms. Phillips, Officer Tabitha Johnson of the Greenville Police Department interviewed Jessica, who stated that

[her brother] was asleep and she was watching TV and eating Cheetos, and [Defendant] came into the room. [Defendant] asked her what she was doing. She told him she's eating Cheetos and drinking a Pepsi. He asked her if she wanted something stronger to drink, referring to his alcoholic beverage in his hand. [Jessica] told--stated that she told him no, but he tried to make her drink his beverage. She also reported to me that he said to her, while putting his finger in his mouth--Suck it, baby. Suck it. Started trying to put it in her mouth. I apologize.

She reported that he then began kissing her neck and her face and rubbing and squeezing her butt. [Defendant] asked her to kiss—asked her if she could kiss his chest and saying--If you let me suck on your chest, your breasts will grow in nice and pretty. She said that she moved away, and he grabbed her hand and tried to put it--his hands in his pant--put her hands in his pants near his private. She snatched her hand away. [Defendant] told her--I was just trying to have a little fun with you. And this is her--me quoting what she's saying--and walked out of the room. She said he returned with another alcoholic beverage and put some in a cup and tried--and made [Jessica] drink it. She said she pushed him away but continued to rub on her hair and kiss her neck and telling her just to go to sleep. [Jessica] said she would not to go sleep, and he left out of the room.

## B. Procedural History

On 24 June 2012, a warrant for arresting charging Defendant with misdemeanor sexual battery and contributing to the abuse and neglect of a juvenile was issued. On 23 January 2013, Judge David A. Leech found Defendant guilty as charged in the Pitt

County District Court. On the following day, Judge Leech entered a judgment sentencing Defendant to a term of 150 days imprisonment based upon his conviction for misdemeanor sexual battery, with this sentence being suspended and with Defendant being placed on supervised probation, subject to certain terms and conditions, for a period of 24 months, and to a consecutive term of 120 days imprisonment based upon his conviction for contributing to the abuse or neglect of a juvenile, with this sentence also being suspended and Defendant being placed on supervised probation, subject to certain terms and conditions, for a period of 24 months. Defendant noted an appeal to Pitt County Superior Court for a trial *de novo*.

The charges against Defendant came on for trial before the trial court and a jury at the 28 May 2013 session of the Pitt County Superior Court. On 29 May 2013, the jury returned a verdict convicting Defendant as charged. At the conclusion of the ensuing sentencing hearing, the trial court entered a judgment sentencing Defendant to a term of 150 days imprisonment based upon his conviction for misdemeanor sexual battery and to a consecutive term of 120 days imprisonment based upon his conviction for contributing to the abuse or neglect of a minor, with this second sentence being suspended and with Defendant being placed on supervised probation for a period of 18 months,

subject to certain terms and conditions. Defendant noted an appeal to this Court from the trial court's judgments.

## II. Substantive Legal Analysis

### A. Sufficiency of the Evidence

In his initial challenge to the trial court's judgments, Defendant contends that he received constitutionally deficient representation from his trial counsel based upon his trial counsel's failure to move to have the contributing to the abuse or neglect of a juvenile charge dismissed for insufficiency of the evidence. More specifically, Defendant contends that his trial counsel's failure to move that the contributing to the abuse or neglect of a juvenile charge be dismissed for insufficiency of the evidence fell below an objective standard of reasonableness and that, had such a motion been made, it would have been allowed given that the State failed to prove that Defendant was Jessica's caretaker and that merely offering Jessica an alcoholic beverage did not constitute an act of abuse or neglect. Defendant is not entitled to relief from his conviction for contributing to the abuse or neglect of a juvenile on the basis of this claim.

As Defendant candidly concedes, he failed to move that the contributing to the abuse or neglect of a juvenile charge be dismissed for insufficiency of the evidence at trial. As a

general proposition, a defendant's failure to make a dismissal motion after the State's evidence precludes the defendant from challenging the sufficiency of the evidence to support his conviction on appeal. N.C. R. App. P. 10(a)(3). "However, pursuant to N.C. R. App. P. 2, we will hear the merits of [D]efendant's claim despite the rule violation because [D]efendant also argues ineffective assistance of counsel based on counsel's failure to make the proper motion to dismiss." *State v. Fraley*, 202 N.C. App. 457, 461, 688 S.E.2d 778, 783 (2010) (quotation marks and citation omitted), *disc. review denied*, 364 N.C. 243, 698 S.E.2d 660 (2010).

"To survive a motion to dismiss in a criminal action, the State's evidence must be substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. The trial court must view all evidence in the light most favorable to the State, including evidence that was erroneously admitted." *State v. Denny*, 179 N.C. App. 822, 824, 635 S.E.2d 438, 440 (2006) (internal quotation marks and citations omitted), *aff'd in part, modified on other grounds in part, and rev'd on other grounds in part*, 361 N.C. 662, 652 S.E.2d 212 (2007). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *State v. Tabron*, 147 N.C. App. 303, 306, 556 S.E.2d 584, 585 (2001) (quotation marks and citations omitted), *disc. review improvidently granted*, 356 N.C. 122, 564 S.E.2d 881 (2002). "This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)). We will now utilize this standard of review to evaluate the validity of Defendant's challenge to the sufficiency of the evidence to support his conviction for contributing to the abuse or neglect of a juvenile.

N.C. Gen. Stat. § 14-316.1 provides that:

> [a]ny person who is at least 16 years old who knowingly or willfully causes, encourages, or aids any juvenile within the jurisdiction of the court to be in a place or condition, or to commit an act whereby the juvenile could be adjudicated delinquent, undisciplined, abused, or neglected as defined by [N.C. Gen. Stat. §] 7B-101 and [N.C. Gen. Stat. §] 7B-1501 shall be guilty of a Class 1 misdemeanor.

N.C. Gen. Stat. § 7B-101(1) defines an abused juvenile as "[a]ny juvenile less than 18 years of age whose parent, guardian,

custodian, or caretaker" (1) inflicts or allows to be inflicted upon the juvenile a serious physical injury; (2) creates or allows to be created a substantial risk of serious physical injury to the juvenile; (3) uses or allows to be used on the juvenile cruel or grossly inappropriate procedures or devices to modify behavior; (4) commits, permits, or encourages the commission of a variety of specific sexual assaults, acts of prostitution, and obscenity offenses by, with, or upon the juvenile; (5) creates or allows to be created serious emotional damage to the juvenile evinced by a juvenile's severe anxiety, depression, withdrawal, or aggressive behavior toward himself or others; (6) encourages, directs, or approves of delinquent acts involving moral turpitude committed by the juvenile; or (7) commits or allows to be committed acts of human trafficking, involuntary servitude or sexual servitude against the child. A neglected juvenile is defined as

> [a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15). Finally, a caretaker, for purposes of the abuse and neglect statutes, is defined as

> [a]ny person other than a parent, guardian, or custodian who has responsibility for the health and welfare of a juvenile in a residential setting.  A person responsible for a juvenile's health and welfare means a stepparent, foster parent, an adult member of the juvenile's household, an adult relative entrusted with the juvenile's care, any person such as a house parent or cottage parent who has primary responsibility for supervising a juvenile's health and welfare in a residential child care facility or residential educational facility, or any employee or volunteer of a division, institution, or school operated by the Department of Health and Human Services.

N.C. Gen. Stat. § 7B-101(3).

In seeking to persuade us that the record did not support Defendant's conviction for contributing to the abuse or neglect of a juvenile, Defendant initially argues that the record does not suffice to support a determination that he was Jessica's caretaker.  Defendant's argument is, however, simply inconsistent with our recent decision in *State v. Stevens*, __ N.C. App. __, __, 745 S.E.2d 64, 67, *disc. review dismissed*, 367 N.C. 256, 749 S.E.2d 885, *disc. review denied*, 367 N.C. 256, 749 S.E.2d 886 (2013), in which this Court explicitly held that a finding of guilt for violating N.C. Gen. Stat. § 14-316.1 "does not require a parental or caretaker relationship between a defendant and a juvenile" and stated, instead, that "[d]efendant need only be a person who causes a juvenile to be in a place or condition where the juvenile does not receive proper care from a

caretaker or is not provided necessary medical care." *See also State v. Cousart*, 182 N.C. App. 150, 153, 641 S.E.2d 372, 374-75 (2007) (stating that the gravamen of the act of contributing to the delinquency, abuse, or neglect of a minor is "conduct on the part of the accused" in willfully "caus[ing], encourag[ing], or aid[ing]") (alterations in original). As a result, as long as Defendant's conduct placed Jessica in a position in which she did "not receive proper care from a caretaker or is not provided necessary medical care," *Stevens*, __ N.C. App. at __, 745 S.E.2d at 67, he is subject to the criminal sanction for violating N.C. Gen. Stat. § 14-316.1.

In apparent recognition of the problems with his initial argument, Defendant also contends that the record did not suffice to support a determination that his actions placed Jessica in a position in which she could be found to be abused or neglected. As the record clearly establishes, however, Defendant entered the bedroom in which Jessica was attempting to go to sleep, tried to get her to take a drink from the cup of liquor that he was carrying, played with her hair, and squeezed her buttocks. As Defendant squeezed Jessica's buttocks, he asked her to suck his thumb and requested that she allow him to suck on her chest so "they'll grow up really big and pretty." In view of the fact that a juvenile who found herself in the

position that Jessica occupied and was subject to the attentions that Defendant attempted to pay to her was clearly placed in a location in which and subject to conditions under which she could not and did not receive proper care from her caretakers, the State's evidence clearly sufficed, given the test enunciated in *Stevens*, to support Defendant's conviction for contributing to the abuse or neglect of a juvenile.[2] As a result, the record evidence clearly sufficed to support Defendant's conviction for contributing to the abuse or neglect of a juvenile, a fact that necessitates the conclusion that Defendant's ineffective assistance of counsel claim has no merit.[3]

---

[2]As the State notes in its brief, Defendant's conduct as described in Jessica's testimony clearly constituted the taking of an indecent liberty with a minor in violation of N.C. Gen. Stat. § 14-202.1, which is one of the offenses that can underlie an abuse adjudication. N.C. Gen. Stat. § 7B-101(1)(d). In addition, this Court has held that a father's decision to offer marijuana and beer to a child, while not rising to the level of abuse, constituted neglect. *In re M.G.*, 187 N.C. App. 536, 551, 653 S.E.2d 581, 590 (2007), *rev'd on other grounds*, 363 N.C. 570, 681 S.E.2d 290 (2009). Thus, given the absence of any requirement that Defendant be Jessica's parent, guardian, or caretaker and the fact that Defendant's conduct placed Jessica in a position and subject to conditions under which she could be found to be abused or neglected, the relevant statutory provisions and decisions of this Court clearly support Defendant's conviction for contributing to the abuse or neglect of a juvenile.

[3]The warrant charging Defendant with contributing to the abuse or neglect of a juvenile alleged, in pertinent part, that "the defendant named above unlawfully and willfully did knowingly, while at least 16 years of age, cause[], encourage, and aid [Jessica], age 8 years, a juvenile, to commit an act,

## B. Jury Instructions

After the completion of the evidence and the arguments of counsel, the trial court instructed the jury with respect to the issue of Defendant's guilt of contributing to the abuse or neglect of a juvenile as follows:

> The defendant has also been charged with contributing to the abuse and neglect of a juvenile. For you to find the defendant

---

consume alcoholic beverage, whereby that juvenile could be adjudicated abused and neglected." In his brief, Defendant argues, in reliance upon *State v. Faircloth*, 297 N.C. 100, 107, 253 S.E.2d 890 894 (stating that "[i]t has long been the law of this state that a defendant must be convicted, if convicted at all, of the particular offense charged in the warrant or bill of indictment"), *cert. denied*, 444 U.S. 874, 100 S. Ct. 156, 62 L. Ed. 2d 102 (1979), that the only basis upon which Defendant could lawfully have been convicted of contributing to the abuse or neglect of a juvenile was by encouraging her to consume alcohol. We do not find this argument persuasive for two reasons. First, as this Court held in *Stevens*, __ N.C. App. at __, 745 S.E.2d at 66, an indictment that fails to allege the exact manner in which the defendant allegedly contributed to the delinquency, abuse, or neglect of a minor is not fatally defective. Unlike the situation at issue in *Faircloth*, in which the State sought to convict the defendant of a completely different offense from the one alleged in the indictment, the State did, in fact, proceed against Defendant on the grounds that he committed the offense of contributing to the abuse or neglect, rather than the delinquency, of a juvenile. *State v. Tollison*, 190 N.C. App. 552, 557, 660 S.E.2d 647, 651 (2008) (stating that, since "a victim's age is not an essential element of first degree kidnapping," "the variance in the indictment was not fatal"). Secondly, and more importantly, Defendant's argument relies upon an unduly narrow reading of the contributing to the abuse or neglect of a juvenile warrant that completely overlooks the context in which Defendant attempted to persuade Jessica to consume alcohol. As a result, Defendant's argument in reliance upon the language of the contributing warrant is not persuasive.

> guilty of this offense the State must prove four things beyond a reasonable doubt:
>
> First, that the defendant was at least 16 years old.
>
> Second, that the defendant caused, encouraged, and aided the juvenile to commit an act whereby the juvenile could be adjudicated abused and neglected.
>
> Third, that [Jessica] was a juvenile. An abused and neglected juvenile is a person who has not reached her 18th birthday, and is not married, emancipated, or a member of the armed forces of the United States.
>
> And [f]ourth, that the defendant acted knowingly or willfully.

As Defendant candidly concedes, he failed to object to the trial court's contributing to the abuse or neglect of a minor instruction at or before the time that the jury retired to begin its deliberations, so that our review is limited to determining whether plain error occurred. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334, (2012). A plain error is an error that is "'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]'" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *U.S. v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982), *cert. denied*, 459 U.S. 1018, 103 S. Ct. 381, 74 L. Ed. 2d. 513 (1982)). "To establish plain error, defendant must show that the erroneous jury instruction was a fundamental error—that the error had a probable impact on

the jury verdict." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334. As a result, in order to establish the existence of plain error, a "defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

As Defendant correctly asserts in his brief, the trial court's instructions misstated the applicable law by instructing the jury that it should find that Jessica was an abused or neglected juvenile in the event that it found beyond a reasonable doubt that she had not reached her 18th birthday and had not been married, emancipated, or entered military service.[4] For that reason, the only issue that remains for our consideration is whether Defendant is entitled to relief from his contributing to the abuse or neglect of a juvenile

---

[4]As we have already noted, in order to convict Defendant of the offense made punishable by N.C. Gen. Stat. § 14-316.1 in light of the allegations set out in the warrant that had been issued against him, the jury had to find beyond a reasonable doubt that Defendant caused, encouraged, or aided Jessica to be placed in a location or situation in which she could be adjudicated abused or neglected. A cursory reading of the trial court's instructions establishes that the trial court totally failed to instruct the jury concerning the meaning of the statutory references to abuse or neglect and, in essence, told the jury to find the existence of those prerequisites for a conviction on the sole basis of Jessica's age and the fact that she had not been married, emancipated, or entered military service. Thus, the trial court's instructions, which are consistent with the applicable pattern jury instruction, clearly misstated the applicable law.

conviction based upon this erroneous instruction. As a result, the ultimate question raised by Defendant's challenge to the trial court's instructions concerning the issue of his guilt of contributing to the abuse or neglect of a minor is the extent to which it is probable that the outcome of Defendant's trial would have been different had the trial court correctly instructed the jury concerning the issue of whether Defendant had placed Jessica in a place or set of circumstances under which she could be adjudicated abused or neglected.

The only evidence before the jury concerning the issue of Defendant's guilt of contributing to the abuse or neglect of a minor consisted of Jessica's testimony and evidence concerning statements that Jessica had made to other persons that was offered for corroborative purposes. As we read the record, the argument that Defendant advanced before the jury in support of his request for an acquittal on both the contributing to the abuse or neglect of a minor charge and the misdemeanor sexual battery charge rested on a contention that Defendant had no motivation for engaging in the conduct described in Jessica's testimony, an assertion that Jessica was biased against him, a description of certain inconsistencies in the accounts concerning Defendant's conduct that Jessica provided on different occasions, and a claim that certain statements that

Jessica had made were unlikely to be true given other surrounding circumstances. Thus, the ultimate issue presented for the jury's consideration at trial was whether Jessica was a credible witness, an issue that the jury clearly answered in the affirmative.

A careful review of the record satisfies us that, even though the trial court's instructions rested on a clear misstatement of the applicable law, it is not probable that the outcome at trial would have been different in the event that the jury had been correctly instructed. The description of Defendant's conduct contained in Jessica's testimony, which the jury obviously believed, sufficed to support a determination that he contributed to the abuse or neglect of a minor. We are unable to see how the trial court's erroneous instruction in any way enhanced the likelihood that the jury would have resolved the underlying credibility contest in Defendant's favor. Having determined, contrary to the arguments vigorously advanced by Defendant's trial counsel, that Jessica's testimony was credible, the jury would necessarily have determined that Defendant placed her in a location or set of circumstances under which she "[did] not receive proper care from a caretaker or [was] not provided necessary medical care." *Stevens*, __ N.C. App. at __, 745 S.E.2d at 67. As a result, given that "the term

'plain error' does not simply mean obvious or apparent error, but rather has the meaning given by the court in" *Lawrence*, *Odom*, 307 N.C. 660, 300 S.E.2d 378 (holding that the failure to instruct on the issue of the defendant's guilt of a lesser included offense did not rise to the level of plain error), *see also Lawrence*, 365 N.C. at 519, 723 S.E.2d at 334-35 (holding that the omission of an element from the trial court's instruction to the jury concerning the issue of Defendant's guilt of conspiracy to commit robbery with a dangerous weapon did not rise to the level of plain error), we conclude that the trial court's instructional error did not constitute plain error and that Defendant is not, for that reason, entitled to relief from his conviction for contributing to the abuse or neglect of a minor based upon the trial court's erroneous instruction.

### C. Prosecutor's Final Argument

Thirdly, Defendant contends that he is entitled to relief from his convictions based upon remarks that the prosecutor made during his closing argument. More specifically, Defendant contends that the prosecutor's comments to the effect that Defendant had ruined Jessica's childhood and that, in the event that the jury failed to find Jessica's testimony to be credible, it would be sending a message that Jessica would need to be hurt, raped, or murdered before an alleged abuser could be

convicted, were improper. Defendant is not entitled to relief from his convictions based upon this set of contentions.

Statements made during closing arguments to the jury are to be viewed in the context in which the remarks are made and the overall factual circumstances to which they make reference. *State v. Jaynes*, 353 N.C. 534, 559, 549 S.E.2d 179, 198 (2001) (citation omitted), *cert. denied*, 535 U.S. 934, 122 S. Ct. 1310, 152 L. Ed 2d 220 (2002). As a general proposition, counsel are allowed wide latitude in closing arguments, *State v. Johnson*, 298 N.C. 355, 368-69, 259 S.E.2d 752, 761 (1979) (citations omitted), so that a prosecutor is entitled to argue all reasonable inferences drawn from the facts contained in the record. *State v. Phillips*, 365 N.C. 103, 135, 711 S.E.2d 122, 145 (2011) (citations omitted), *cert. denied*, __ U.S. __, 132 S. Ct. 1541, 182 L. Ed. 2d 176 (2012). "Unless the defendant objects, the trial court is not required to interfere *ex mero motu* unless the arguments stray so far from the bounds of propriety as to impede the defendant's right to a fair trial." *State v. Small*, 328 N.C. 175, 185, 400 S.E.2d 413, 418 (1991) (quotation marks and citations omitted). As a result, given that Defendant did not object to the prosecutorial comments that are addressed in his brief, the ultimate issue raised by Defendant's challenge to the prosecutor's closing argument is

the extent, if any, to which the challenged comments were so egregiously improper as to necessitate judicial intervention despite the absence of an objection.

In the course of his closing argument, the prosecutor asserted that:

> [The Defendant] has no right to ruin [Jessica's] childhood, because how--what memories is she going to have as--of her eight-year old time?  What's going to be the dominant thing in her life when she thinks back to being eight and nine?  It's going to be this man groping her, having to come in and testify and face him.
>
> . . . .
>
> So it comes down to is it sufficient to listen to an eight-year-old girl--convict somebody of this crime?  And if it's not, then this case is never going to be--we'll never prove it.  Never.  So why shouldn't we believe her? Because she's eight?  Is that why?  Do we say that no eight-year-old is ever going to be believable? . . .  Now, if you don't believe her because she's eight or because there's no forensic evidence, then what you're saying is --Well, maybe we should let it go a little further so we can get more evidence.  Is it fair to tell an eight-year-old--Well, you know, honey, we'd like to help you, but you got to get hurt first. You got to get hurt first.  Now, we've got some evidence then.  You get hurt, get raped or murdered, we got some evidence then.  But just your word, just your word, nah.

We do not believe that either of the challenged comments necessitated *ex moro motu* intervention on the part of the trial court.

### 1. Ruining Jessica's Childhood

In arguing that Defendant had ruined Jessica's childhood, the prosecutor simply made a reasonable inference, based upon the record evidence, that Jessica would be traumatized by the events in question. According to the record, Jessica was eight years old at the time of the incident underlying this case. In addition, Jessica told Ms. Phillips that she believed that Defendant, whom she had known for her entire life, was attempting to rape her. Under that set of circumstances, the prosecutor's inference that Jessica had been traumatized by Defendant's actions was a reasonable one. As a result, since the prosecutor's comment to the effect that Defendant had ruined Jessica's childhood represented a reasonable inference drawn from the record, the trial court did not err by failing to intervene *ex mero motu* to address the challenged prosecutorial argument.

Although the Supreme Court has held that an argument that undermines reason and is designed to viscerally appeal to the jurors' passions or prejudices is improper, *see State v. Jones*, 355 N.C. 117, 132-33, 558 S.E.2d 97, 107 (2002) (holding that

references to the Columbine school shooting and Oklahoma City bombing during a murder trial was improper, in part, because it attempted to lead jurors away from the evidence by appealing to their sense of passion and prejudice), a prosecutor may argue that the jury should use its verdict to "send a message" to the community. *State v. Barden*, 356 N.C. 316, 367, 572 S.E.2d 108, 140 (2002) (citation omitted), *cert. denied*, 538 U.S. 1040, 123 S. Ct. 2087, 155 L. Ed. 2d 1074 (2003); *State v. Nicholson*, 355 N.C. 1, 43-44, 558 S.E.2d 109, 138 (citations omitted), *cert. denied*, 537 U.S. 845, 123 S. Ct. 178, 154 L. Ed. 2d 71 (2002). Finally, a prosecutor is entitled to argue that the jury should or should not believe a witness and explain the reasons that the prosecutor believes should cause the jury to reach such a credibility-related conclusion in his or her final argument. *See State v. Wilkerson*, 363 N.C. 382, 425, 683 S.E.2d 174, 200 (2009) (citation omitted), *cert. denied*, 559 U.S. 1074, 130 S. Ct. 2104, 176 L. Ed. 2d 734 (2010); *State v. Augustine*, 359 N.C. 709, 725, 616 S.E.2d 515, 528 (2005), *cert. denied*, 548 U.S. 925, 126 S. Ct. 2980, 165 L. Ed. 2d 988 (2006); *State v. Scott*, 343 N.C. 313, 344, 471 S.E.2d 605, 623 (1996) (citation omitted).

## 2. Jessica's Credibility

As we have already noted, the ultimate issue before the jury in this case was Jessica's credibility. The obvious purpose of the second set of challenged prosecutorial comments was to urge the jury to find Jessica's testimony to be credible despite the fact that the record did not contain physical evidence that supported her description of Defendant's conduct. Admittedly words like "murder" and "rape" are, without doubt, emotionally charged. Although Defendant attempts to analogize the prosecutor's second set of challenged remarks to those at issue in *Jones*, that analogy is unpersuasive given that the remarks under consideration in *Jones* referred to information outside the record and compared the defendant's conduct with infamous acts committed by others, neither of which is true of the prosecutorial comments at issue here. As a result of the fact that the prosecutorial comments at issue here were grounded in the evidentiary record and represented nothing more than an assertion that the jury should not refrain from believing Jessica because the record did not contain corroborative physical evidence, we conclude that the trial court did not err by failing to intervene *ex mero motu* to address the second set of prosecutorial comments that Defendant has challenged in his brief. Thus, Defendant is not entitled to relief from his

convictions based on allegedly improper comments by the prosecutor.

### D. Ms. Phillips' Testimony

Finally, Defendant contends that the trial court committed plain error by allowing Ms. Phillips to deliver testimony that, in Defendant's opinion, improperly appealed to the jury's sympathy and impermissibly vouched for Jessica's credibility. According to Defendant, the trial court should have excluded this evidence despite the fact that he failed to object to its admission at trial on the grounds that the evidence in question was irrelevant and constituted impermissible lay opinion testimony. We do not find Defendant's argument persuasive.

### 1. Relevance

"The admissibility of evidence is governed by a threshold inquiry into its relevance." *State v. Griffin*, 136 N.C. App. 531, 550, 525 S.E.2d 793, 806 (citations omitted), *disc. review denied*, 351 N.C. 644, 543 S.E.2d 877 (2000). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401. Evidence that is "not part of the crime charged but pertain[s] to the chain of events explaining the context, motive, and set-up of the crime,

is properly admitted if linked in time and circumstances with the charged crime, or if it forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *State v. Agee*, 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990) (quoting *U.S. v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)) (internal brackets omitted). A trial court's ruling with respect to relevance issues is "technically . . . not discretionary and therefore is not reviewed under the abuse of discretion standard[,]" but is, nevertheless, entitled to great deference on appeal. *Sherrod v. Nash General Hosp. Inc.*, 126 N.C. App. 755, 762, 487 S.E.2d 151, 155 (1997) (quoting *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *appeal dismissed*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 113 S. Ct. 321, 121 L. Ed. 2d 241 (1992)) (internal quotation marks and brackets omitted), *aff'd in part and rev'd in part on other grounds*, 348 N.C. 526, 500 S.E.2d 708 (1998). As a result of the fact that Defendant failed to object to the admission of the challenged evidence at trial, we review Defendant's challenge to the admission of this evidence using a plain error standard of review.

At trial, Ms. Phillips testified that, after Jessica told her about Defendant's conduct, Ms. Phillips "got scared and shut

down," "was in shock," laid down with Jessica, and "started crying." Subsequently, Ms. Phillips saw Defendant coming out of the bathroom, "grabbed him by the shirt," "threw him out the screen door," and "told him if he ever come back to [her] house again," she "would kill him, because [she] was mad and scared at the time." Finally, Ms. Phillips also stated that she told Jessica's father about Defendant's actions and "he got up raging."

The challenged portion of Ms. Phillips' testimony was relevant to show what occurred immediately after Defendant's alleged assault upon Jessica. The fact that Jessica reported the incident to Ms. Phillips immediately after it occurred, rather than waiting until a later time to make her accusation, tends to bolster the credibility of her testimony and was relevant for that reason. Similarly, the challenged portion of Ms. Phillips' testimony tends to show that Jessica had given a consistent account of her interaction with Defendant from the time of her first conversation with Ms. Phillips immediately after the incident occurred until she testified at trial. Finally, the challenged portion of Ms. Phillips' testimony, which details her reaction to Jessica's allegations and the events that led up to Defendant's arrest, helped complete the story of Defendant's assault upon Jessica for the jury. As a

result, the trial court did not err by failing to exclude the challenged portion of Ms. Phillips' testimony on relevance grounds.

## 2. Vouching for Jessica's Credibility

According to N.C. Gen. Stat. § 8C-1, Rule 701, the testimony of a non-expert witness "in the form of opinions or inferences is limited to . . . opinions or inferences [that] are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his [or her] testimony or the determination of a fact in issue." The admission of opinion testimony intended to bolster or vouch for the credibility of another witness violates N.C. Gen. Stat. § 8C-1, Rule 701. *State v. Robinson*, 355 N.C. 320, 334-35, 561 S.E.2d 245, 255, *cert. denied*, 537 U.S. 1006, 123 S. Ct. 488, 154 L. Ed. 2d 404 (2002). "As long as the lay witness has a basis of personal knowledge for his [or her] opinion, the evidence is admissible." *State v. Bunch*, 104 N.C. App. 106, 110, 408 S.E.2d 191, 194 (1991).

In addition to questioning its relevance, Defendant contends that the challenged portion of Ms. Phillips' testimony impermissibly vouched for Jessica's credibility. However, Ms. Phillips never directly commented on the issue of Jessica's credibility. Put another way, Ms. Phillips never specifically

stated whether she believed Jessica or not. Although Defendant argues that the challenged portion of Ms. Phillips' testimony contained an implicit expression of confidence in Jessica's veracity, we are unable to read such an implication into what Ms. Phillips actually said. Finally, even if Ms. Phillips' testimony did, in some manner, amount to an impermissible comment concerning Jessica's credibility, any error that the trial court may have committed by allowing the admission of that testimony did not rise to the level of plain error. In view of the relatively incidental nature of any vouching for Jessica's credibility that might have occurred and the fact that most jurors are likely to assume that a grandmother would believe an accusation of sexual abuse made by one of her own grandchildren, *see State v. Freeland*, 316 N.C. 13, 18, 340 S.E.2d 35, 37 (1986) (stating that a jury would naturally assume that a mother would believe that her daughter was telling the truth concerning a sexual assault allegation); *State v. Dew*, __ N.C. App. __, __, 738 S.E.2d 215, 219 (stating that "most jurors are likely to assume that a mother will believe accusations of sexual abuse made by her own children."), *disc. review denied*, 366 N.C. 595, 743 S.E.2d 187 (2013) we are simply unable to conclude that the outcome at Defendant's trial would probably have been different had the trial court refrained from allowing the admission of the

challenged portion of Ms. Phillips' testimony.  As a result, the trial court did not commit plain error by allowing the admission of the challenged portion of Ms. Phillips' testimony.[5]

### III. Conclusion

Thus, for the reasons set forth above, we conclude that none of Defendant's challenges to the trial court's judgments have merit.  As a result, the trial court's judgments should, and hereby do, remain undisturbed.

NO ERROR.

Judge ROBERT N. HUNTER, JR., concurred in the result only prior to 6 September 2014.

Judge DAVIS concurs.

---

[5]In his brief, Defendant contends that, even if he is not entitled to relief from his convictions based on a single error, the cumulative effect of the errors that he contends that the trial court committed deprived him of a fair trial.  However, given that "the plain error rule may not be applied on a cumulative basis," *State v. Dean*, 196 N.C. App. 180, 194, 674 S.E.2d 453, 463, *disc. review denied*, 363 N.C. 376, 679 S.E.2d 139 (2009), and given that none of Defendant's challenges to the trial court's judgments were properly preserved for purposes of appellate review, we conclude that Defendant is not entitled to relief from the trial court's judgments on the basis of the cumulative error doctrine.