IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-556

Filed 5 March 2024

Mecklenburg County, No. 19 CRS 238696

STATE OF NORTH CAROLINA

v.

ALEJANDRO CORDOVA AGUILAR.

Appeal by Defendant from Judgments entered 9 January 2023 by Judge Reggie E. McKnight in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 January 2024.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Hilary R. Ventura, for the State.*
>
> *Joseph P. Lattimore for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Alejandro Cordova Aguilar (Defendant) appeals from Judgments entered pursuant to jury verdicts finding Defendant guilty of Sexual Battery, Assault on a Female, and False Imprisonment. The Record before us, including evidence produced at trial, tends to show the following:

The alleged victim in this case is S.S.[1] At the time of the incident at issue in

---

[1] A pseudonym stipulated to by the parties.

this case, S.S. was fifteen years old, working as a hostess at Azteca Mexican Restaurant in Matthews, North Carolina. Defendant worked as a waiter at the same restaurant. S.S. testified at trial that around 2:00 p.m. on 5 October 2019, she took her break and went to a closet to retrieve her belongings. S.S. stated after picking up her book bag, she turned around and saw Defendant right in front of her, holding the door with one hand. S.S. testified Defendant began kissing her and grabbing her inappropriately. According to S.S., Defendant then abruptly stopped and walked out of the closet. She exited the closet shortly thereafter and encountered two other employees near the closet. S.S. told those employees Defendant had just said "hi" to her.

S.S.'s cousin testified she was supposed to drive S.S. home after her shift at the restaurant on 5 October; however, S.S. asked her to come inside, and she found S.S. in the bathroom. When her cousin asked S.S. what happened, S.S. began to cry and told her Defendant "put his hands on her and started kissing her forcefully." S.S. and her cousin then told S.S.'s mother about the incident, and they called the police.

Detective Danielle Helms of the Matthews Police Department interviewed S.S., her mother, and her cousin. The statement Detective Helms reported S.S. made was consistent with S.S.'s trial testimony.

At trial, during the State's direct examination of Detective Helms, the following exchange occurred:

> [State's Counsel]: And, Detective Helms, you said you

investigated felonies and serious misdemeanors for the better part of 18 years; is that right?

[Detective Helms]: Correct.

[State's Counsel]: At any point in your investigation, did you question the validity of [S.S.]'s sorry? [sic]

[Detective Helms]: I did not.

[Defense Counsel]: Objection.

[Trial Court]: Sustained. If you can rephrase your question.

The State then asked for clarification as to the basis for the trial court's decision and each side was heard. Defense counsel specifically raised the issue of the Detective offering opinion testimony, stating: "So what she's trying to do is invade that providence [sic] of the jury. This is the jury's determination whether someone's telling the truth or not." The trial court then, hearing the State repeat its question, overruled the objection and allowed Detective Helms to answer. The State then continued this line of questioning:

> [State's Counsel]: And why did you feel that you didn't have any reason to question the truthfulness of [S.S.]?
>
> [Detective Helms]: During her-- you know, during the course of the investigation, she came forward immediately with the accusation, as soon as it happened. Her cousin picked her up, and she was obviously very volatile, crying, upset, went home, contacted her mom, told her the story. They immediately contacted the police, came in. I was able to talk to her. The story stayed the same, consistent with the statement that she gave the first officer, with my interview, and I know we have corroborating evidence of the Aztec video.

[State's Counsel]: And you said that the story stayed the same as far as her statements that she gave to the other officer and to you.

[Detective Helms]: Correct.

[State's Counsel]: Anything about the fact that she mentioned details about talking to those other witnesses after she left the storage closet or any of the other details that she added that are not in State's Exhibit 2 give you any reason to feel differently?

[Detective Helms]: No.

[Defense Counsel]: I'll renew my objection. This is all just opinion.

[Trial Court]: Overruled.

Defendant challenged the veracity of S.S.'s account at various points during the trial by illustrating inconsistencies in prior statements given by S.S., pointing out discrepancies between the video footage and S.S.'s statements, and eliciting an admission from S.S. that she did not report the alleged assault to the coworkers she encountered when she left the closet.

On 9 January 2023, the jury returned verdicts finding Defendant guilty of Sexual Battery, Assault on a Female, and False Imprisonment. The trial court consolidated the convictions for Sexual Battery and Assault on a Female into one Judgment and sentenced Defendant to 75 days of imprisonment, which was suspended with supervised probation for 12 months. The trial court imposed a suspended sentence of 45 days of imprisonment for the False Imprisonment conviction and ordered 12 months of unsupervised probation to run consecutive to the

other sentence. Defendant timely filed written Notice of Appeal on 11 January 2023.

## Issue

The issue before us is whether the trial court erred by allowing Detective Helms to vouch for the alleged victim's credibility.

## Analysis

### I.    Preservation

As a threshold issue, the State contends Defendant failed to preserve this issue for appeal. The State argues Defendant's objection did not preserve this issue because Defendant did not object to all of the challenged testimony. Thus, in the State's view, Defendant's prior and subsequent objections were waived. *See State v. Walters*, 357 N.C. 68, 104, 588 S.E.2d 344, 365 (2003). Contrary to the State's assertion, pursuant to N.C. Gen. Stat. § 15A-1446(d)(10), even if a party fails to object to the admission of evidence at some point during trial, that party may nevertheless challenge "[s]ubsequent admission of evidence involving a specified line of questioning when there has been an improperly overruled objection to the admission of evidence involving that line of questioning." N.C. Gen. Stat. § 15A-1446(d)(10) (2023); *see also State v. Corbett*, 376 N.C. 799, 826, 855 S.E.2d 228, 248 (2021).

Here, Defendant immediately objected when the State asked Detective Helms whether she had questioned S.S.'s story. The trial court heard the parties' arguments on the objection and Defendant explicitly stated the State's question was asked for a credibility judgment: "So what [the State] is trying to do is invade that providence

[sic] of the jury. This is the jury's determination whether someone's telling the truth or not." Thus, Defendant timely objected and gave a proper foundation for the objection, which Defendant argues here. The trial court then overruled Defendant's objection and the State was allowed to ask the question again and proceeded to ask a few follow-up questions. At the conclusion of the follow-up, Defendant renewed his objection, stating: "This is all just opinion." Although Defendant did not object to each additional question on this issue, our Supreme Court has held N.C. Gen. Stat. § 15A-1446(d)(10) provides litigants the right to challenge subsequent evidence admitted in a specific line of questioning "when there has been an improperly overruled objection to the admission of evidence involving that line of questioning." *Corbett*, 376 N.C. at 826, 855 S.E.2d at 248 (quoting N.C. Gen. Stat. § 15A-1446(d)(10) (2019)).

This Court has recently addressed this issue, applying the statute to a similar set of facts in *State v. Graham*, 283 N.C. App. 271, 276-78, 872 S.E.2d 573, 578-79 (2022). There, defense counsel initially objected to an improper question about the defendant's communications with his attorney but failed to renew his objection when the State asked subsequent questions on this issue. *Id.* This Court rejected the State's argument the defendant had failed to preserve the issue for appellate review, concluding: "Defendant did object to the State's initial question regarding the substance of Defendant's communications with counsel. Accordingly, any further questions regarding the substance of those communications is preserved as a matter

of law if the objection was erroneously overruled." *Id.* at 278, 872 S.E.2d at 579. The facts of this case are the same, except that here Defendant did renew his objection after the State's subsequent questions. Thus, Defendant's objection to Detective Helms' testimony as improper opinion testimony is preserved if we conclude Defendant's initial objection was erroneously overruled. Because we so conclude, this issue is properly before this Court.

## II.    Detective Helms' Testimony

On appeal, "[w]e review a trial court's ruling on the admissibility of lay opinion testimony for abuse of discretion." *State v. Belk*, 201 N.C. App. 412, 417, 689 S.E.2d 439, 442 (2009) (citations omitted). North Carolina Rule of Evidence 701 governs lay opinion testimony. It provides: "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2023). Our Courts have consistently held "[i]t is improper for one witness to vouch for the veracity of another." *State v. Bellamy*, 172 N.C. App. 649, 663, 617 S.E.2d 81, 91 (2005) (citing *State v. Robinson*, 355 N.C. 320, 334-35, 561 S.E.2d 245, 255 (2002)); *see also State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988) (citations omitted) (noting ordinarily the State may not present testimony "to the effect that a prosecuting witness is believable, credible, or telling the truth[.]").

Further, "[t]he admission of opinion testimony intended to bolster or vouch for the credibility of another witness violates N.C. Gen. Stat. § 8C-1, Rule 701." *State v. Harris*, 236 N.C. App. 388, 403, 763 S.E.2d 302, 313 (2014) (citing *Robinson*, 355 N.C. at 334-35, 561 S.E.2d at 255). "[T]he trial court commits a fundamental error when it allows testimony which vouches for the complainant's credibility in a case where the verdict entirely depends upon the jurors' comparative assessment of the complainant's and the defendant's credibility." *State v. Warden*, 376 N.C. 503, 504, 852 S.E.2d 184, 186 (2020). Our Supreme Court has explained the rationale behind the exclusion of lay opinion testimony as follows:

> [T]he truthfulness of a particular witness should be determined by the jury rather than by a witness for one party or the other, as the "jury is the lie detector in the courtroom" and "is the only proper entity to perform the ultimate function of every trial—determination of the truth[.]"

*State v. Caballero*, 383 N.C. 464, 475, 880 S.E.2d 661, 669 (2022) (quoting *State v. Kim*, 318 N.C. 614, 621, 350 S.E.2d 347, 351 (1986)).

Considering the Record before us and applicable precedent, we are persuaded the challenged portion of Detective Helms' testimony was inadmissible. We have noted a detective or other law enforcement officer may testify as to why they made certain choices in the course of an investigation, including their basis for believing a particular witness. *See State v. Taylor*, 238 N.C. App. 159, 168-69, 767 S.E.2d 585, 591-92 (2014) (Bryant, J. dissenting), *rev'd* 368 N.C. 300, 776 S.E.2d 680 (reversing the Court of Appeals opinion "[f]or reasons stated in the dissenting opinion.").

Here, in contrast, the challenged testimony was clearly unrelated to Detective Helms' investigatory decision-making. First, unlike the exchange at issue in *Taylor*, Detective Helms' statement was not made in connection with a direct question about her investigative choices. In *Taylor*, counsel for the State asked the lead investigator on the case, "What made you go forward [with the investigation]?" *Id.* at 165, 767 S.E.2d at 589. The investigator responded she believed the alleged victim was telling her the truth because she had given the investigator "all the information possible[.]" *Id.* Similarly, in *State v. Richardson*, the police department's investigatory decisions were a key issue. 346 N.C. 520, 488 S.E.2d 148 (1997). There, law enforcement had initially investigated a person as the perpetrator and obtained a warrant for his arrest, but then changed course and arrested the defendant instead. *Id.* at 527-28, 488 S.E.2d at 152-53. After interviewing the person the defendant identified as the perpetrator, law enforcement then believed the defendant was the perpetrator. *Id.* at 528, 488 S.E.2d at 152. At trial, the State's questioning asked law enforcement officers to explain that shift and their choice to believe the witness' story instead of the defendant's. *Id.* at 533-34, 488 S.E.2d at 156.

In contrast, here, the State merely asked Detective Helms whether she had questioned the validity of S.S.'s story. Rather than asking the detective to explain her decision-making process in the course of the investigation, the State elicited an evaluation of S.S.'s credibility. The follow-up question after Defendant's objection was overruled asked Detective Helms to explain why she thought S.S. was credible.

Again, this question went precisely to the issue of credibility, or as the State put it in the question, "the truthfulness of [S.S.][.]"

Moreover, these questions were not posed in the context of examining law enforcement's decisions made during the course of the investigation. Unlike the law enforcement officers in *Richardson* and *Taylor*, Detective Helms was not asked in this exchange why she made certain decisions or why she did or did not do something; she was merely asked whether she had doubted S.S. and to explain why she believed S.S. was truthful. Although whether an officer believes a witness is telling them the truth certainly may influence his or her decision-making in an investigation, that issue was not raised by the questioning in this case. The challenged testimony came after Detective Helms testified as to what S.S. had told her in the initial interview and stated that she had reviewed the footage from Azteca Restaurant. Immediately preceding the challenged exchange, the State asked: "And, Detective Helms, you said you investigated felonies and serious misdemeanors for the better part of 18 years; is that right?" This underscores that the question was posed for the foundational purpose of reminding the jury of Detective Helms' experience so that they would trust her judgment of S.S.'s credibility rather than making an independent determination based on the evidence presented. Thus, the challenged testimony was not offered for a permissible purpose. Therefore, the testimony impermissibly vouched for another witness' credibility.

The State further contends even if the challenged portion of Detective Helms'

testimony had been improperly admitted, Defendant had opened the door to such evidence through the cross-examination of S.S., and thus this testimony was admissible under N.C.R. Evid. 608(a).  The State argues Defendant "raised inferences concerning the lead detective's investigation and about S.S.'s credibility" during his cross-examination of S.S.  Consequently, in the State's view, the State had the right to offer rebuttal and explanatory testimony on those issues.  *See State v. Johnston*, 344 N.C. 596, 605-06, 476 S.E.2d 289, 294 (1996).  We disagree.

Rule 608(a) of the North Carolina Rules of Evidence provides:

> The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion as provided in Rule 405(a), but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

N.C. Gen. Stat. § 8C-1, Rule 608(a) (2023).  "Put another way, Rule 608(a) allows the party that called a witness to bolster the credibility of that witness' 'character for truthfulness' in the event that the credibility of that witness has been attacked 'by evidence in the form of reputation or opinion.' " *Caballero*, 383 N.C. at 479, 880 S.E.2d at 671.  Our Supreme Court in *Caballero* rejected a similar challenge to a police officer's testimony regarding a witness' credibility.  *Id.* at 478-79, 880 S.E.2d at 671.  In dismissing this argument, the Court characterized the defendant's cross-examination as "pointing out what he believed to be inconsistencies between the information contained in [the victim's] trial testimony and the statements that [the

victim] gave to investigating officers." *Id.* at 479, 880 S.E.2d at 671. It continued, "the challenged portion of [the officer]'s testimony constituted a direct assertion that [the victim] had passed the credibility test that he had administered to her rather than 'evidence of truthful character.'" *Id.*

Likewise in this case, Defendant did not attack S.S.'s credibility "by opinion or reputation evidence or otherwise." Instead, Defendant attempted to challenge S.S.'s credibility by pointing out inconsistencies in prior statements given by S.S., showing discrepancies between the video footage and S.S.'s statements, and eliciting an admission from S.S. that she did not report the alleged assault to the coworkers she encountered when she left the closet. These methods are consistent with those our Supreme Court held in *Caballero* do not implicate Rule 608(a). Moreover, just as in *Caballero*, Detective Helms' testimony was a direct assertion S.S. was credible; it cannot be characterized as mere "evidence of truthful character." *Id.*

III.   Prejudice

"[E]ven if the admission of [evidence] was error, in order to reverse the trial court, the appellant must establish the error was prejudicial. If the other evidence presented was sufficient to convict the defendant, then no prejudicial error occurred." *State v. James*, 224 N.C. App. 164, 166, 735 S.E.2d 627, 629 (2012) (quoting *State v. Bodden*, 190 N.C. App. 505, 510, 661 S.E.2d 23, 26 (2008) (citation omitted)). "The burden of showing such prejudice . . . is upon the defendant." *Bellamy*, 172 N.C. App. at 661, 617 S.E.2d at 90 (citations omitted). "A defendant is prejudiced by errors

relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2023).

The State contends there was sufficient evidence beyond Detective Helms' vouching for S.S.'s credibility to convict Defendant. The State points to S.S.'s testimony, video of her interview with Detective Helms and her victim statement, the video of Defendant entering the closet with S.S. at Azteca Restaurant, and testimony from S.S.'s cousin and mother. However, much of that evidence relied on S.S.'s credibility, including her testimony, interview, and witness statement. Further, S.S.'s cousin and mother were not witnesses to the alleged incident; rather, they testified only to their interactions with S.S. after the alleged incident. While the video from Azteca Restaurant does show Defendant entering the closet after S.S., it does not show what happened inside the closet. All of the evidence about what happened in the closet came from S.S. Thus, her credibility was the most significant issue in the case.

Our Supreme Court has stated:

> [C]oncern for the fairness and integrity of criminal proceedings requires trial courts to exclude testimony which purports to answer an essential factual question properly reserved for the jury. When the trial court permits such testimony to be admitted, in a case where the jury's verdict is contingent upon its resolution of that essential factual question, then our precedents establish that the jury's verdict must be overturned.

*Warden,* 376 N.C. at 510, 852 S.E.2d at 190.

The Court's analysis in *State v. Aguallo* is instructive. 318 N.C. 590, 350 S.E.2d 76 (1986). There, in addition to the victim's testimony, the State offered evidence the victim had consistently told the same story to others. *Id.* at 599, 350 S.E.2d at 82. Although there was some physical evidence, the Court determined "the State's case hinged on the victim's testimony and thus upon her credibility." *Id.* The Court noted cross-examination of the victim "raised some doubts about the victim's credibility" and consequently concluded admission of testimony improperly vouching for the victim's credibility was prejudicial error "[b]ecause it is likely that any doubts the jurors may have had about the victim's credibility were allayed by the pediatrician's testimony that she found the victim to be 'believable[.]' " *Id.* Absent that testimony, the Court concluded there was a "reasonable possibility that a different result would have been reached by the jury." *Id.* at 599-600, 350 S.E.2d at 82.

In the present case, defense counsel likewise worked to undermine S.S.'s credibility by illustrating inconsistencies in prior statements given by S.S., pointing out discrepancies between the video footage and S.S.'s statements, and eliciting an admission from S.S. that she did not report the alleged assault to the coworkers she encountered when she left the closet. Thus, not only was S.S.'s credibility the central issue of the case but also the other evidence offered was not substantial in the face of

doubts raised by Defendant. Considering these circumstances and consistent with our Supreme Court's holding in *State v. Aguallo*, we conclude there is a reasonable possibility the jury would have reached a different result absent Detective Helms' testimony vouching for S.S.'s credibility. Therefore, Defendant was prejudiced by the erroneous admission of Detective Helms' challenged testimony.

## **Conclusion**

Accordingly, for the foregoing reasons, we vacate the trial court's Judgments and remand for a new trial.

NEW TRIAL.

Judges CARPENTER and GORE concur.